IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOBBY GUTIERREZ, in his capacity as
Wrongful Death Personal Representative of the
Estate of ROBERT P. GUTIERREZ,

       Plaintiff,

       v.                                      Case No. 1:21-cv-00073-KWR-SCY

UNI TRANS, LLC, UNITRANS, LLC, CEVA
LOGISTICS U.S., INC., and SHAMROCK
TRADING CORPORATION,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Shamrock Trading Corporation's Motion to Dismiss Plaintiff's First Amended Complaint (**Doc. 93**), filed December 28, 2021. Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well taken, and therefore is **GRANTED**. This Court has no jurisdiction over Shamrock Trading Corporation.

### BACKGROUND

This diversity case is a personal injury action resulting from a tragic traffic collision in New Mexico. On the morning of March 28, 2020, Robert P. Gutierrez's vehicle was stopped in traffic on I-40 eastbound. **Doc. 80, ¶ 13**. Then, a tractor-trailer allegedly driven by Otabek Saydiev crashed into the back of the vehicle driven by Mr. Gutierrez, causing him severe, permanent injuries, and killing his son. *Id.* **¶¶ 12–14, 19**. Saydiev allegedly fell asleep while driving the

tractor-trailer and took no evasive action or slowed down before colliding with Mr. Gutierrez. *Id.* ¶¶ **17–18**. Mr. Gutierrez passed away 16 months after the accident. *Id.* ¶ **19**.

At the time of the accident, Saydiev was allegedly employed as a commercial driver for Defendant Uni Trans, LLC and was carrying a load for Defendant CEVA Logistics, U.S., a partner of Defendant Uni Trans. *Id.* ¶¶ **4, 7, 15**. Defendant Shamrock Trading Corp. ("Shamrock") allegedly provided "all aspects of funding, servicing, and account collection" to Defendant Uni Trans, which purportedly allowed Uni Trans to purchase tractor-trailers and hire truck drivers. *Id.* ¶ **5**. Defendant Uni Trans owned and maintained the tractor-trailer driven by Saydiev allegedly "through the assistance of its joint venture with Defendant Shamrock." *Id.* ¶ **15**.

Plaintiff Bobby Gutierrez, in his capacity as Wrongful Death Personal Representative of the Estate of Mr. Gutierrez, now alleges the following claims: Negligence and Negligence *per se* against Saydiev[1] and vicarious liability of Defendant Uni Trans (Count I), and Negligence, Negligence *per se*, and Joint and Several Liability against all Defendants (Count II). *See* **Doc. 80**.

Defendant Shamrock filed the instant motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, alleging that this Court lacks general or specific personal jurisdiction over Shamrock, and seeking dismissal of Plaintiff's Complaint for failure to state a claim against Shamrock. *See* **Doc. 93**.

## LEGAL STANDARDS

When jurisdiction is contested, the plaintiff has the burden of establishing personal jurisdiction over the defendant. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). At this stage, where a pre-trial motion to dismiss is considered by a court without an evidentiary

---

[1] Plaintiff's claims against Saydiev were dismissed without prejudice for failure to serve him. *See* **Doc. 78**.

2

hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *See AST Sports*, 514 F.3d at 1057. The plaintiff can satisfy this burden by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). This showing is "light." *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations omitted); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). In other words, in determining whether the requisite showing has been made, all factual disputes are resolved in the plaintiff's favor and, if uncontroverted by the defendant's affidavits, the well-pled factual allegations in the Complaint must be taken as true. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). Still, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Wenz*, 55 F.3d at 1508 (quoting *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

## DISCUSSION

First, Defendant Shamrock alleges it is not subject to specific or general jurisdiction in New Mexico, and therefore, the Court lacks personal jurisdiction over Shamrock. *See* **Doc. 93, at 5–11**. Second, Defendant alleges that Plaintiff's Complaint is an "impermissible 'shotgun' pleading" under Federal Rules of Civil Procedure 8 and 10. *Id.* **at 12**. Finally, Defendant alleges that Plaintiff's Complaint must be dismissed for failure to state a claim because Plaintiff failed to

plead any specific facts showing that there was any kind of relationship between Defendants Shamrock and Uni Trans, or that Shamrock exercised any control over Uni Trans necessary for vicarious liability to attach for these claims. *Id.* **at 12–14**.

Here, the Court concludes that Plaintiff has not met his burden to plead personal jurisdiction over Defendant Shamrock. Because Plaintiff has failed to sufficiently plead jurisdiction over Shamrock, the Court declines to address the substantive merits of Plaintiff's Complaint raised by Shamrock. *See Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1140 (D.N.M. 2011) ("When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue…If jurisdiction is lacking, the court cannot render a valid judgment on the merits of the other issues.").

## I. Whether this Court has Personal Jurisdiction over Defendant Shamrock.

This case is brought to federal court based on diversity jurisdiction, and therefore, this Court is required to apply New Mexico law. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir. 2011) ("In a federal court diversity case, except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *See Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54; *Fireman's Fund*, 703 F.3d at 492–93. The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process.

"Due process requires both that the defendant [1] 'purposefully established minimum contacts within the forum State' and [2] that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In other words, "the contacts with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *XMission*, 955 F.3d at 839–40 (internal quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Yet, even if a plaintiff satisfies the minimum contacts requirement, the defendant can still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King Corp.*, 471 U.S. at 477.

### A. Whether Defendant Has Sufficient Minimum Contacts with New Mexico.

A defendant's contacts with the forum state can result in either general or specific jurisdiction. "A court may assert general jurisdiction over foreign [] corporations [or individuals] to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The other type of personal jurisdiction is specific jurisdiction, meaning that the cause of action arises from a particular transaction of business or commission of a tortious act in which the defendant "purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Romero v. TitleMax of New Mexico, Inc.*, No. CV 17-775 KG/SCY, 2020 WL 4547294, at *2 (D.N.M. Aug. 6, 2020) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

5

### 1. General Jurisdiction.

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton*, 375 F.3d at 1080 (quoting *OMI Holdings*, 149 F.3d at 1091). Thus, for general jurisdiction to exist, Plaintiff must demonstrate that Defendant Shamrock's contacts with New Mexico were so "continuous and systematic" that the court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996); *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008).

Generally, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *See Goodyear*, 564 U.S. at 924. Courts have considered several factors in assessing the relative strength of a defendant corporation's contacts with a forum, such as: "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *See Trierweiler*, 90 F.3d at 1533.

Defendant Shamrock argues that "Plaintiff has not alleged any affiliation that Shamrock has with the State of New Mexico, let alone affiliations that are so 'continuous and systematic' as to render th[e] company 'essentially at home' in New Mexico." *See* **Doc. 93, at 11**. In response, Plaintiff argues that Defendant Shamrock "has continuous and systematic contacts with New

Mexico for purposes of establishing general personal jurisdiction" through its operation of a "joint venture with Defendant Uni Trans which[] operates fleets of semi tractor-trailers in New Mexico." *See* **Doc. 101, at 12**.

Plaintiff's joint venture theory will be discussed below. The Court here will only focus on Defendant Shamrock. The evidence does not provide any basis for finding that Defendant Shamrock is essentially "at home" in New Mexico. The uncontroverted evidence establishes the following: Defendant Shamrock is a Kansas corporation with its principal place of business in Overland Park, Kansas. *See* **Doc. 93-1, Ex. A, at ¶ 3**. Defendant Shamrock is not registered to do business in New Mexico; has not appointed an agent for service of process or otherwise in New Mexico; does not pay taxes in New Mexico; has no assets, real property, or employees based in New Mexico; nor does it have any business interests in New Mexico or produce, supply, design, or distribute goods into the "stream of commerce." *See id.*, **¶¶ 4–7, 11–12**; *see also Rosenberg v. Deutsche Bank AG*, No. 11-CV-02200-WJM-CBS, 2012 WL 1963356, at *6 (D. Colo. May 22, 2012) (finding no general jurisdiction where defendants, although registered with the Colorado Secretary of State, had no official presence in Colorado where they were not incorporated, did not have their principal place of business, and did not own any property, maintain any offices, or employ any individuals in Colorado). Therefore, the Court concludes that Plaintiff has not met the prima facie burden of demonstrating that the Court has general jurisdiction over Defendant Shamrock.

### 2. Specific Jurisdiction

Specific jurisdiction is "premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.

For specific jurisdiction to exist, a plaintiff must show that (1) the defendant has "purposefully directed [its] activities at residents of the forum" and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings*, 149 F.3d at 1090–91 (internal quotations omitted).

First, purposeful direction "requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there." *See XMission*, 955 F.3d at 840 (cleaned up); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations omitted). Thus, "the unilateral activity of another party or a third person…or the mere foreseeability that [a defendant's] actions may cause injury in that jurisdiction" is insufficient. *See XMission*, 955 F.3d at 840–41 (internal quotations and citations omitted). In general, purposeful direction may be established under four frameworks, including: (1) continuing relationships with forum state residents; (2) deliberate exploitation of the forum state market; (3) harmful effects in the forum state; and (4) the stream of commerce theory. *See Old Republic*, 877 F.3d at 904–08, 909 n.21.

Second, the "arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *See XMission*, 955 F.3d at 840. Thus, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations and alterations omitted). In sum, for a defendant to avail itself to specific personal jurisdiction, the plaintiff must establish

8

"not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*"  *See Dudnikov*, 514 F.3d at 1077 (emphasis in original).

Here, Plaintiff asserts that Defendant Shamrock "purposefully avails itself of the protections and benefits of New Mexico's law and can reasonably anticipate being hauled into court in New Mexico."  *See* **Doc. 101, at 13**.  Plaintiff argues that "Defendant Shamrock, via its corporate structure, reaches beyond the State of Kansas and creates continuing relationships and obligations with citizens of New Mexico and other states by virtue of its involvement in virtually every stage of the interstate transportation of commerce."  *Id.*

These continuing relationships, Plaintiff alleges, are created by Defendant Shamrock's wholly owned subsidiaries, through which Defendant Shamrock "charges carriers like Defendant Uni Trans money using its trusts as secured parties for all assets of these carriers, charges those carriers to find and check the credit of customers wishing to transport goods on those tractor-trailers, arranges the shipments," and undertakes a number of other business activities in order to profit.  *Id.* **at 5**.  Plaintiff argues that "[e]ach [Shamrock] subsidiary performs one function, but each subsidiary is owned primarily, if not wholly by Defendant Shamrock, [and has] the same limited number of people serving on their boards and sharing and comingling the profits from all the companies."  *Id.*  Plaintiff has proffered incorporation documents for Defendant Shamrock and its subsidiaries, and other publicly availably corporate documents, which it asserts supports its allegations.

Defendant maintains that "Shamrock has no connection to the accident that has given rise to this lawsuit."  *See* **Doc. 93-1, Ex. A, at ¶ 13**.  Defendant argues that Plaintiff has not shown or plausibly alleged that Shamrock "purposefully directed its activities towards New Mexico, let

9

alone that the claims arise out of those activities." *See* **Doc.93, at 8**. Defendant argues that even if Plaintiff's allegations were true, "providing the financing for businesses (none of which include Uni Trans) is how business is usually conducted and not enough for a court to find specific jurisdiction in a personal injury lawsuit." ***Id.***

Defendant Shamrock further contends that "personal jurisdiction over a subsidiary corporation does not give personal jurisdiction over the parent corporation, even if the parent wholly owns the subsidiary." ***Id.* at 9**. Defendant argues that "Shamrock is a completely separate entity from Uni Trans," and Plaintiff has not asserted "a single allegation against any of Shamrock's subsidiary companies," but instead, Plaintiff "has jumped from Uni Trans straight to Shamrock." *See* **Doc. 93, at 9–10**. Defendant argues that Plaintiff's proffered evidence "reflect only normal corporate affiliate interactions," and do not bear on the Court's personal jurisdiction analysis. *See* **Doc. 105, at 8**.

In relevant part, the "typical" purposeful direction analysis looks to an out-of-state defendant's "continuing relationships and obligations with citizens of the forum state." *See Old Republic*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 473). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum." *See AST Sports*, 514 F.3d at 1059; *Old Republic*, 877 F.3d at 905 (A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Thus, in determining whether a contractual relationship demonstrates a defendant's purposeful minimum contacts with a forum, the Court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *See AST Sports*, 514 F.3d at 1058 (*Burger King Corp.*, 471 U.S. at 479). The Court must also examine "the quantity and quality" of the defendant's contacts with the forum. *See OMI Holdings*, 149 F.3d at 1092.

10

The contracts or relationships at issue here that Plaintiff seeks to provide the basis for personal jurisdiction over Defendant Shamrock include: (1) a factoring agreement between Defendant Uni Trans and RTS Financial Service, Inc. ("RTS Financial"), a subsidiary of Shamrock, and (2) a presumed freight brokering contract between Defendant Uni Trans and Ryan Transportation Service, Inc. ("Ryan Transportation"), another Shamrock subsidiary. Here, the Court concludes that Plaintiff has not met the light burden to show specific jurisdiction over Defendant Shamrock. Fatal to Plaintiff's claim is that there is no evidence of Defendant Shamrock's involvement or connection to these contracts or to New Mexico by way of these contracts. *See, e.g.*, **Doc. 93-1, Ex. A, at ¶ 13** ("Shamrock has no connection to the accident that has given rise to this lawsuit."). The contracts involve Shamrock's subsidiaries, not Defendant Shamrock.

Further, Plaintiff's "alter ego" arguments are unavailing. "As a general rule, the mere relationship of [a] parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *See Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 32, 138 N.M. 607, 618, 124 P.3d 585, 596 (quoting *Smith v. Halliburton Co.*, 1994-NMCA-055, ¶ 8, 118 N.M. 179, 182, 879 P.2d 1198, 1201); Restatement (Second) of Conflict of Laws § 52 cmt. b (1971) ("Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[,] even [if] the parent owns all of the subsidiary's stock."). However, a court may deem a subsidiary the "alter ego" of a parent and pierce the corporate veil where "the parent's control goes beyond that normally exercised by a majority shareholder" and is "so complete as to render the subsidiary an instrumentality of the parent." *See Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (internal

11

quotations and citations omitted).  Under those circumstances, disregard of the corporate entity may be justified, and the contacts of the subsidiary may be imputed to the parent for purposes of establishing general jurisdiction over the parent.  *See Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *Benton*, 375 F.3d at 1080–81.

Notably, here, regardless of Defendant Shamrock and its subsidiaries alter ego status, Plaintiff has provided no evidence that the Shamrock subsidiaries have sufficient minimum contacts with New Mexico in the first instance.  Plaintiff has presented evidence that RTS Financial and Ryan Transportation were Kansas corporations.  *See generally* **Doc. 101-2, Ex. 2**; **Doc. 101-3, Ex. 3**.  Defendant Shamrock has presented uncontroverted evidence that the contract between RTS Financial and Defendant Uni Trans "has no nexus with New Mexico." *See* **Doc. 93-1, Ex. A, at ¶ 8**.  Defendant Shamrock has also asserted that a contract between Ryan Transportation and Uni Trans existed at the time of the accident, but that this contract was unrelated to the "load being transported at the time of the accident." *Id.* **¶ 9**.  Although Defendant is silent on this contract's nexus with New Mexico, Plaintiff bears the burden of establishing personal jurisdiction over Defendant.  Plaintiff did not plead, nor has Plaintiff shown, that RTS Financial or Ryan Transportation purposefully directed their activities at residents of New Mexico and that this litigation results from alleged injuries that arise out of or relate to those activities.

Thus, even assuming that Defendant Shamrock and its subsidiaries were alter egos of one another, Plaintiff has failed to allege any facts supporting a conclusion that Ryan Transportation, RTS Financial, or *any* Shamrock subsidiary, had sufficient minimum contacts with New Mexico. Overall, Plaintiff has failed to provide any basis for the Court to conclude that specific or general jurisdiction exists over the purported alter egos, and without any showing of the sufficient minimum contacts of the supposed alter ego subsidiaries, there are no contacts to impute to

Defendant Shamrock. Therefore, the Court concludes that Plaintiff has failed to show specific jurisdiction over Defendant Shamrock such that it "manifestly availed itself of the privilege of conducting business" in New Mexico or that its contacts with New Mexico were more than "fortuitous."

### 3. Joint Venture Theory

Plaintiff primarily rests his jurisdictional arguments on a joint venture theory of minimum contacts. First, Plaintiff alleges that Defendant Shamrock, through its subsidiaries, "provided all aspects of funding, servicing, and account collection for Defendant Uni Trans." *Id.* **at 3–4**. Plaintiff argues that Shamrock utilized its subsidiaries, such as Ryan Transportation, RTS Financial, and RTS Carrier Services, Inc. "to empower shell corporations, like Defendant Uni Trans," and that these subsidiaries are the alter egos of Defendant Shamrock. *See* **Doc. 80, ¶ 5**; **Doc. 101, at 4–7**.

Second, Plaintiff alleges that the Court may assert personal jurisdiction over Defendant Shamrock because Shamrock, through these alter ego subsidiaries, was in a joint venture with Defendant Uni Trans, which does not contest this Court's jurisdiction, and therefore, Uni Trans' contacts with New Mexico can be imputed to Shamrock. *See* **Doc. 101, at 12**. Thus, according to Plaintiff, "[b]y operating a joint venture with Defendant Uni Trans which, operates fleets of semi tractor-trailers in New Mexico, Defendant Shamrock has continuous and systematic contacts with New Mexico for purposes of establishing" general and specific jurisdiction. *Id.* In sum, Plaintiff asserts that "Defendant Shamrock's relationship with [Defendant Uni Trans] via its alter ego subsidiaries clearly meets the definition of a joint venture." *Id.*

For clarity, the Court summarizes as follows: Plaintiff argues that personal jurisdiction over Defendant Uni Trans should support personal jurisdiction over its alleged venture partner, one or

more non-party Shamrock subsidiaries, which should then establish jurisdiction over its parent, Defendant Shamrock, because Plaintiff argues it is the alter ego of these subsidiaries. Plaintiff has not cited any case establishing personal jurisdiction in such a manner. Thus, despite Plaintiff's combination of two separate bases for establishing jurisdiction, the Court will analyze Plaintiff's assertions independently. In this case, because the existence of a joint venture is dispositive to the resolution of the personal jurisdiction question, the Court will only address Plaintiff's joint venture arguments.

Here, Defendant Shamrock maintains that Plaintiff's joint venture argument is "incorrect" because "the status of companies as 'joint employers' or part of a 'single, integrated enterprise' may be relevant to the question of liability [but] is not material to the question of whether personal jurisdiction exists." *See* **Doc. 105, at 4**. However, the "joint venture" theory of jurisdiction put forward by Plaintiff is different from the "joint employer" theory interpreted by Defendant.

New Mexico permits the exercise of personal jurisdiction based on an agency theory. *See Campos Enterprises, Inc. v. Edwin K. Williams & Co.*, 1998-NMCA-131, ¶ 18, 125 N.M. 691, 698, 964 P.2d 855, 862. For example, "a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state, but this agency theory applies only when the agent's acts are committed in the course of or within the scope of the agent's employment." *Fireman's Fund*, 703 F.3d at 493–94 (internal quotations omitted). One such agency relationship is a joint venture. *See, e.g.*, *McAleer v. Smith*, 728 F. Supp. 857, 861 (D.R.I. 1990) ("As with partnerships, a mutual agency exists among joint venturers.").

"Some courts have held that the actions of an agent, such as a partner, can confer personal jurisdiction over a partnership or joint venture." *Accord Fireman's Fund*, 703 F.3d at 493. The "joint venture theory" provides that "the minimum contacts of one co-venturer are attributable to

14

other co-venturers such that personal jurisdiction over one means personal jurisdiction over all." *Hill v. Shell Oil Co.*, 149 F. Supp. 2d 416, 418 (N.D. Ill. 2001). In other words, "whenever one co-venturer acts in the forum to further the interests of the venture, his contacts with the same will, for purposes of personal jurisdiction, also be attributed to his co-venturers." *See Aigner v. Bell Helicopters, Inc.*, 86 F.R.D. 532, 540 (N.D. Ill. 1980). "Consequently, when the related activities of one co-venturer in the forum are sufficient to sustain the exercise of jurisdiction, personal jurisdiction ordinarily will lie as to all of the co-participants in the venture." *Id.* Thus, "[t]he continuous and systematic conduct of one joint venturer may be imputed to his or her cohorts for jurisdictional purposes." *McAleer*, 728 F. Supp. at 861.

"[T]he manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called." *Chevron Oil Co. v. Sutton*, 1973-NMSC-111, ¶ 4, 85 N.M. 679, 681, 515 P.2d 1283, 1285. Therefore, for personal jurisdiction purposes, a party may be subject to estoppel when it holds itself out as being in a joint venture, even if it is not a true joint venture. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002). At this stage, Plaintiff need only make a prima facie showing that the parties were engaged in a joint venture at the time of the accident or held themselves out as such.

Under New Mexico law, "a joint venture is generally considered to be a partnership for a single transaction." *See Lightsey v. Marshall*, 1999-NMCA-147, ¶ 18, 128 N.M. 353, 357, 992 P.2d 904, 908 (internal quotations omitted).[2] "A joint venture is formed when the parties agree to

---

[2] Plaintiff has not specified where the alleged joint venture between Defendant Uni Trans and Defendant Shamrock, through its subsidiaries, was formed. Thus, the Court will default to applying New Mexico law. However, the Court recognizes that the joint venture analysis is performed using the law of the state where the joint venture was formed or took effect. *See, e.g.*, *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 83 (2d Cir. 1995) ("Since a joint venture is created pursuant to a contract, either express or implied…we would follow [the forum's] general conflicts

combine their money, property or time for conducting a particular business venture and agree to share jointly in profits and losses, with the right of mutual control over the business enterprise or over the property." *Quirico v. Lopez*, 1987-NMSC-070, ¶ 9, 106 N.M. 169, 170, 740 P.2d 1153, 1155. Whether a joint venture exists is a question of the intent of the parties. The parties' intent may be inferred from the parties' "acts in connection with the entire transaction." *Id.*

Here, RTS Financial had a factoring agreement with Uni Trans at the time of the accident. *See* **Doc. 93-1, Ex. A, at ¶ 8**. Plaintiff alleges that RTS Financial "collects all the accounts payable for the services rendered" by Defendant Uni Trans and "provides funding for government receivables, including those with the State of New Mexico." *See* **Doc. 80, at ¶ 5**. Ryan Transportation had a contract with Uni Trans at the time of the accident. *See* **Doc. 93-1, Ex. A, at ¶ 9**. Plaintiff alleges that Ryan Transportation Services "provides freight brokerage services" to Defendant Uni Trans. *See* **Doc. 80, at ¶ 5**.

The Court finds that Plaintiff has not alleged any facts, which, if true, establish that RTS Financial or Ryan Transportation[3]—two Defendant Shamrock subsidiaries in direct relationships with Defendant Uni Trans—were in a joint venture with Uni Trans. Plaintiff's reliance on *Certain Underwriters at Lloyd's v. Garmin Int'l Inc.*, No. 11-2426 EFM-GLR, 2012 WL 1158849 (D. Kan. Apr. 6, 2012) and *Luxton v. Leja*, No. 14-CV-416-JED-PJC, 2016 WL 4997885 (N.D. Okla. Sept. 19, 2016) is dispositive and resolves these issues in Defendant Shamrock's favor.

---

rules and apply the substantive law of the state where the joint venture was formed or of the state where the joint venture had operative effect.").

[3] Defendant maintains that "[n]o other subsidiary of Shamrock had any connection with Uni Trans, LLC or the subject accident." *See* **Doc. 93, Ex. A, ¶ 10**. Plaintiff asserts the contrary and urges the Court to "utterly disregard[]" Defendant's proffered evidence. *See* **Doc. 101, at 10**. The Court's role at this stage is not to weigh the parties' evidence, and instead, all factual disputes must be resolved in Plaintiff's favor. Notwithstanding the resolution of this dispute in Plaintiff's favor, Plaintiff's allegation of additional subsidiary ties, *see* **Doc. 101, at 10–11**, does not change the Court's joint venture outcome.

In *Luxton*, the court concluded that there was evidence supporting a prima facie existence of a joint venture for personal jurisdiction under Michigan law where the plaintiff presented facts showing:

> (1) there was an implied agreement between the owners of Delta S and Delta Z [the defendants] supporting their intention to undertake a joint venture; (2) the owners of Delta S and Delta Z jointly undertook (3) a single project—a common carrier business—for profit; (4) Delta Z shared its profits with Delta S; (5) Delta S's owner and Delta Z's owner contributed their management skills to both businesses, and Delta Z contributed its earnings and leased its trucks free of charge for a period of time to Delta S; and (6) the owner of Delta S was a manager for Delta Z and vice versa, thus showing the existence of mutual community interest and control over the subject matter of the venture.

2016 WL 4997885, at *6. Similarly, in *Certain Underwriters*, the court found that the plaintiffs had made a prima facie showing of the co-venturers minimum contacts with the forum state, where

> Plaintiffs have shown that [defendant] Bartle held himself out to be in a joint venture with both [defendants] Garmin, and Garmin A.T. In addition, Plaintiffs have shown that Bartle held out that he had an extensive and ongoing relationship with Garmin in relation to the G900X, including the manufacture and sale of special mounts for the G900X, and has his own Garmin vendor number. Plaintiffs have also shown that the G900X was developed, marketed, and sold out of Garmin's Olathe, Kansas [the forum state's] headquarters.

2012 WL 1158849, at *4 (D. Kan. Apr. 6, 2012).

Here, unlike the plaintiffs in *Luxton* and *Certain Underwriters*, Plaintiff has alleged and shown nothing more than the existence of a contract between the Shamrock subsidiaries and Defendant Uni Trans, and Shamrock's ownership of its subsidiaries. Plaintiff has not alleged, nor does the evidence support, the finding of an intent to carry out or any actions supporting a joint venture between Uni Trans and Ryan Transportation or Uni Trans and RTS Financial, or any other subsidiary. Therefore, the Court concludes that Plaintiff has not met his prima facie burden under a joint venture theory. In sum, Plaintiff has not provided any basis for the Court to conclude that there is personal jurisdiction over Defendant Shamrock.

### B. Whether the Assertion of Personal Jurisdiction Comports with Fair Play and Substantial Justice.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Stated differently, the inquiry is whether exercising jurisdiction would be reasonable. In determining whether the Court's exercise of personal jurisdiction is reasonable, the Court considers five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *See OMI Holdings*, 149 F.3d at 1095. Here, having determined Plaintiff did not meet his burden of showing Defendant Shamrock's sufficient minimum contacts, the Court finds it unnecessary to address these factors.

### C. Whether Jurisdictional Discovery is Proper.

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). However, whether to grant jurisdictional discovery is a matter of discretion for the district court. *Id*. While jurisdictional discovery motions are liberally granted, "[t]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—is on the party seeking the discovery." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (internal alterations omitted) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*,

18

629 F.3d 1173, 1189 n.11 (10th Cir. 2010)).  Jurisdictional discovery is not appropriate where there is only a "low probability" that additional discovery would lead to facts sufficient to support a finding of personal jurisdiction over the defendant.  *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004); *Grynberg*, 490 F. App'x at 103.

Here, Plaintiff requests discovery "regarding facts that may support establishment of this Court's personal jurisdiction over Defendant Shamrock and the nature of all the Defendants' corporate and financial relationships."  *See* **Doc. 101, at 14**.  In response, Defendant argues that "there is no probability that jurisdictional discovery would impact the Court's ruling," and discovery "cannot assist the exercise of jurisdiction" because Plaintiff's joint venture and subsidiary arguments are "barred" as a matter of law.  *See* **Doc. 105, at 12**

The Court agrees with Defendant in part.  Contrary to Defendant's assertion, alter ego and joint venture theories may serve as the basis to establish jurisdiction over a corporate defendant. However, in this case, Plaintiff's reach for jurisdictional discovery of Defendant Shamrock and its subsidiaries or other allegedly related entities is speculative.  Plaintiff has not specifically identified what facts, financial relationships, or documents he seeks to uncover.  *See Breakthrough Mgmt.*, 629 F.3d at 1190 (affirming the district court's denial where the plaintiff's "conclusory assertion that jurisdictional discovery was necessary seems almost like an attempt to 'use discovery as a fishing expedition' rather than to obtain needed documents to defeat" the motion to dismiss). While Plaintiff has proffered information about the purported corporate relationships of Shamrock subsidiaries, he has not provided any information that these entities have contacts with New Mexico or otherwise enable Defendant Shamrock to have alter ego contacts with New Mexico. Thus, there is little probability that discovery would support a finding of personal jurisdiction over Shamrock.  Accordingly, the Court will deny Plaintiff's request for discovery.

## CONCLUSION

The Court finds that there is no personal jurisdiction over Defendant Shamrock. Plaintiff has failed to sufficiently plead facts establishing general or specific jurisdiction over Defendant Shamrock in New Mexico. Since the Court lacks personal jurisdiction over Defendant Shamrock, it need not consider Shamrock's 12(b)(6) Motion to Dismiss.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (**Doc. 93**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order. The claim against Defendant Shamrock Trading Corporation is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**