**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BOBBY GUTIERREZ, in his capacity as
Wrongful Death Personal Representative of the
Estate of ROBERT P. GUTIERREZ,

   Plaintiff,

  v.            Civ. No. 21-73 KWR/SCY

UNI TRANS, L.L.C, UNITRANS, L.L.C.,
CEVA LOGISTICS U.S., INC., and
SHAMROCK TRADING CORPORATION,

   Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
REGARDING MOTION FOR SANCTIONS**

  This matter comes before the Court on (1) Plaintiff's November 11, 2022 Second Motion

To Compel Discovery Answers And Responses To Plaintiff's First Set Of Written Discovery

From Defendant Uni Trans, L.L.C., Depositions, And For Sanctions, Doc. 181; and (2)

Plaintiff's February 13, 2023 Supplemental Motion For Sanctions Stemming From Its Motions

To Compel Discovery Answers And Responses And Depositions From Defendant Uni Trans

L.L.C., Doc. 227. Plaintiff requests default judgment as to liability against Defendant, adverse

jury instructions on Defendant's net worth and communications following the accident, costs and

fees associated with bringing both motions, and travel costs associated with deposing

Defendant's 30(b)(6) witness. Doc. 187 at 7, Doc. 227 at 11. I recommend granting Plaintiff's

request for default judgment. Because the jury instructions Plaintiff requests are vague and

unworkable, I recommend denying his request for adverse jury instructions. Instead, because

Defendant continues to disobey numerous Court orders to provide certain discovery, by separate

order I recommend that the Court bring Defendant into compliance through a civil contempt

order. Finally, I recommend granting Plaintiff's costs and fees in connection with the sanctions

motion.

## I.    Background

Before providing an overview of the discovery disputes at the base of the present Order, I

provide a brief summary of the status of this case, as this summary bears on the appropriateness

of the sanctions requested and recommended. The parties agree that Defendant's truck driver,

Saydiev Otebek, killed Plaintiff's decedent, Robert Gutierrez, when Otebek fell asleep while

driving Defendant's tractor trailer and crashed into Robert Gutierrez's vehicle. Because Plaintiff

was unable to locate and serve Otebek, the Court has dismissed Plaintiff's claims against him.

Defendant, however, does not dispute that it is liable for Otebek's negligence. What is in dispute

is whether Defendant engaged in conduct that makes it liable for punitive damages and whether

Defendant has attempted to shift its assets into various other entities in an attempt to hide them

from Plaintiff. What assets Defendant has available to satisfy a judgment against it are

particularly relevant because Defendant, having already settled claims filed by other individuals

injured in the same accident, has less than $5,000 remaining on its insurance policy.

Turning now to background related to discovery, the Court entered the first scheduling

order in this case on March 25, 2021. Doc. 16. Thereafter, the Court granted a series of

unopposed requests to extend the deadline to complete discovery, culminating in a discovery end

date of March 9, 2023. Doc. 67 (September 2, 2021 order staying discovery for 90 days); Doc.

81 (November 4, 2021 order lifting the stay and extending discovery through June 3, 2022); Doc.

123 (May 13, 2022 order extending discovery through November 9, 2022); Doc. 150 (August 23,

2022 order extending discovery through March 9, 2023). Save for the brief period during which

discovery was stayed from September 2, 2021 to November 4, 2021, the discovery end date of

March 9, 2023 allowed for nearly two years of discovery in this case.

The Court first began to push back on the parties' repeated requests for extensions of discovery deadlines during the status conference held on August 17, 2022. There, the Court informed the parties that it would extend the then-current case management deadlines by 120 days, but that it did not anticipate allowing further extensions, "given how old this case is and how long the parties have been conducting discovery." Doc. 148 at 2. Despite this admonition, the parties did not complete discovery within 120 days and Plaintiff requested another extension of case management deadlines. Doc. 195. Plaintiff argued the extension was necessary because "Defendant Uni Trans, L.L.C.'s delays to discovery have made movement in this matter extremely difficult." Doc. 195 at 1. The Court denied the request for an extension, stating: "Plaintiff has had *ample* opportunity to serve discovery on Defendant Uni Trans and take depositions. If Defendant Uni Trans has not answered the discovery or has failed to cooperate in setting depositions, Plaintiff may seek relief specifically related to those matters. The Court is not inclined to extend all discovery and case management deadlines further than it already has." Doc. 198 at 3.[1]

Defendant's lack of cooperation in discovery is now squarely before the Court on Plaintiff's motion for sanctions. The discovery dispute now before the Court dates back to Plaintiff's First Set of Interrogatories and Requests for Production to Defendant Uni Trans,

---

[1] Plaintiff explained at a subsequent hearing that Plaintiff and Defendant Uni Trans did not begin discovery when the Court first allowed it because they were waiting for all the parties to appear due to a pending motion to amend the complaint. Doc. 226 at 83:4-16. However, waiting for all parties to enter the litigation does not explain the lengthy delay in written discovery that could have been exchanged between the parties already in the case (Plaintiff and Defendant Uni Trans). Further, the motion to amend was resolved and the new defendant had appeared by December 23, 2021. S*ee* Doc. 89. Thus, Plaintiff's explanation fails to address the nearly-five-month delay between Defendant Ceva Logistics' appearance in the case and Plaintiff's issuance of his first set of written discovery and his requests for depositions in May 2022.

which he served May 12, 2022. Doc. 138 at 1. Defendant served its responses on June 28, 2022.

*Id.*; Doc. 138-1. For the most part, the responses contained nothing of substance; instead,

Defendant's responses mostly consisted of boilerplate promises to supplement at an unspecified

time. Doc. 154 at 1. By order dated August 26, 2022, the Court found that "Defendant failed to

answer the discovery requests within the meaning of Rule 37(a)(4)," admonished that "[t]his case

is in its later stages [and d]iscovery has been ongoing for over 15 months," and ordered:

> Defendant to serve amended responses to Plaintiff's Interrogatories and Requests
> for Production which do not rely on a promise to supplement. If, after a
> reasonable inquiry as described by *Sun River Energy*—in this case, one that
> includes full communication with counsel's clients, in person if necessary—no
> responsive information is obtained, Defendant may so state. The Court cautions
> Defendant, however, that the failure to timely provide responsive information
> could result in a variety of sanctions to include, in the most extreme case, entry of
> judgment against Defendant. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir.
> 1992); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013).
> An assertion that Defendant intends to make a reasonable inquiry in the future
> will not suffice. The time for Defendant and Defendant's counsel to make
> reasonable inquiry has long passed.

Doc. 154 at 5. The Court further ordered Defendant to pay Plaintiff's costs in bringing the

motion. *Id.* at 5-6; Doc. 157.

A.   <u>January 11, 2023 Motion hearing</u>

On November 11, 2022, Plaintiff filed another motion to compel relating to Plaintiff's

first set of written discovery. Plaintiff informed the Court that, as of November 11, Defendant

had not complied with the Court's order to supplement its responses. Doc. 181 at 1. Defendant

filed its response to the Motion to Compel on November 23, Doc. 191, and, on the same day,

served supplemental answers to Plaintiff's first set of discovery, Doc. 190. In reply, Plaintiff

agreed that the supplementation resolved some disputes, but raised concerns with the

supplemental answers, stating that many remain incomplete, and noting that no supplementation

was provided for many other requests at issue. Doc. 201 at 4. The Court then set a hearing to

determine the extent to which Defendant's supplemental responses remained incomplete. Doc. 201 at 4-5.

Also to be addressed at this hearing were contentions Plaintiff made in his November 11 motion to compel that Defendant was being uncooperative in scheduling depositions. Doc. 181. Plaintiff stated that he had been attempting to schedule depositions of "key witnesses" since May 2022. Doc. 181 at 5. From June to October, Plaintiff continually set and re-set depositions. *Id.* at 5-6. After the parties could not agree on dates in December, Plaintiff moved to compel depositions for the week of January 16-20, 2023, explaining that counsel for Plaintiff has proposed these dates and requested availability; and yet again received no response from Defendant. *Id.* at 6. Defendant's November 23 response to this issue was, in full: "Counsel for Defendant has consistently advised counsel for Plaintiff of the availability or unavailability of witnesses for deposition as soon as it was known." Doc. 191 at 7.

The Court found this to be "a woefully insufficient response to a request for depositions that was first made in May 2022" and noted that "Defendant offers no explanation and no excuse for its failure to make witnesses available for the past seven months. The Court finds that Plaintiff is entitled to an order compelling depositions, and further finds that at this stage of the case, Plaintiff is entitled to unilaterally set the depositions for January 16-20, 2023." Doc. 201 at 2-3. "If the designated witnesses fail to appear as specified in the notices, the Court warns Defendant that it may be subject to sanctions under Rule 37 or Rule 45, up to and including default judgment." *Id.* at 3.

Finally, the Court found that Plaintiff's motion "insufficiently addresses the factors the Court is required to consider to award sanctions under Rule 37" and requested that Plaintiff's counsel address the relevant factors at the hearing. Doc. 201 at 5-7.

At the hearing, Defendant's counsel reported that one deposition could not take place the week of January 16-20. Doc. 226 at 3-4. Plaintiff's counsel proposed doing three other depositions that week and requested reimbursement for costs she would incur traveling to Ohio a second time for the remaining deposition. *Id.* at 4-6. The Court permitted this last deposition to take place in February, and ordered Defendant to reimburse Plaintiff counsel's travel costs. *Id.* at 9-10.

Next, the Court and counsel for both parties addressed the outstanding discovery disputes at length. *Id.* at 14-79. With one exception (*id.* at 62-66), the Court agreed with Plaintiff that Defendant's answers were insufficient. Defendant's counsel explained: "I have given everything that I have and that has been provided to me. And my client is not purposefully holding back on anything but they're not great at communicating with me." *Id.* at 15. In many cases, however, the answers and supplemental answers had not said that. *See, e.g.*, *id.* at 26. As Plaintiff's counsel argued, the responses did not preclude the possibility that there could be further responsive information that had not been produced due to a language barrier. *Id.* Defendant's counsel agreed to supplement the responses to indicate, where appropriate, that no further responsive information existed. *Id.* Defendant requested the supplement be due after the defendants' depositions, and Plaintiff objected. The Court ruled that the supplement would be due before the depositions so that Plaintiff could have the information to prepare for the depositions and would then be less likely to experience an unfair surprise at a deposition. *Id.* at 34. In addition, the Court reiterated that in August it had stated that "the time to supplement has long passed." *Id.* The investigation for responsive information should have taken place already. *Id.* Therefore, the Court ordered supplementation to take place by the Monday of the week of the scheduled

depositions. *Id.* at 56-57. The Court also overruled most of Defendant's objections to most of Plaintiff's requested discovery and ordered production of Defendant's tax returns. *Id.* at 77-78.

At the hearing, Plaintiff addressed the prejudice of Defendant's discovery violations. Plaintiff's counsel explained that she retained a damages expert, and that report was not affected by the discovery delays. *Id.* at 12. However, Plaintiff's second expert witness is a trucking industry expert. *Id.* The expert would opine on "how these trucking companies are working together, what their contracts are, how they're set up, what happened in the time after the accident," but the expert lacked critical information on these topics that made it difficult for him to write a report in this case. *Id.*

Plaintiff also noted the difficulty of arguing prejudice when missing information is at stake: "you don't have information to know what the prejudice is of not having that information." *Id.* at 24. Plaintiff speculated that the driver's tablet communication device, which Defendant claimed they did not have and could not find after the accident, "could have an incredible wealth of information and I just don't know." *Id.* With respect to communications between the driver and Defendant's dispatcher, Plaintiff speculated: "if Otabek Saydiev called the [dispatcher] right after that and said . . . 'I'm going to throw my marijuana onto the street right now,' then certainly that would be relevant to a punitive damage claim." *Id.* at 62.

Similarly, with maintenance or repairs records, Plaintiff argued: "Is the company so deficient on maintenance and repairs that there is a claim there for punitive damages against them? Is there a claim for negligent maintenance of their vehicles? Does it show enough negligence over all to say that . . . there's just a lackadaisical approach to running this company in the first place." *Id.* at 51.

Finally, Plaintiff argued that default judgment "wouldn't necessarily be that harsh of a sanction in that this case has never really been about liability." *Id.* at 20. Defendant agreed that it is a "clear liability case," but argued that factor weighed against sanctions because the absence of evidence on the issue of liability is not particularly prejudicial when Plaintiff does not need to prove liability. *Id.* at 25.

Defendant's counsel explained that his clients did not intentionally fail to cooperate in discovery. They speak English but are immigrants and do not understand the American legal system. *Id.* at 85-86. The Court pointed out that they are doing business in the United States and have a duty to cooperate with the legal system. *Id.* at 86-87. The Court then explained:

> [W]hat I was trying to say last August is, okay, when you file something again, check and see if you have that information and if not, then tell us. And so my intent and my thought at the time was that what's going to be done by Monday [January 16-the Monday after the hearing] should have been done by the end of September.
>
> . . . .
>
> [P]art of that is because I had already informed the parties at the [August 17] status conference that I wasn't inclined to extend the discovery deadline. And so what I had in mind when I wrote this [order compelling discovery] last August was that saying that 'discovery is coming' wasn't going to be sufficient and that I was providing that additional month after this order for you to be able to talk to your client and basically do what you're going to be doing this Monday which is to say, 'Look, we've looked and either we have it or we don't have it.'

*Id.* at 87-88.

The Court issued a written order following the hearing that ordered Defendant to supplement its discovery answers "to either produce fully responsive information or state that all information in Defendant's possession has been disclosed." Doc. 214. The Court took under further consideration Plaintiff's request for sanctions.

B.    Supplemental responses

After the parties conducted the depositions in late January and early February, Plaintiff

filed a Supplemental Motion for Sanctions. Doc. 227. As ordered by the Court, Defendant served

its Fourth Supplemental Responses to Plaintiff's first set of discovery on January 16, 2023 (at

5:00 p.m.). *Id.* at 4; *see also* Doc. 217. Plaintiff contends that this supplement continues to be

deficient.

First, Plaintiff argues that Defendant failed to follow the Court's instructions in

supplementing its answer to Interrogatory No. 2:

> INTERROGATORY NO. 2: If Defendant performs hours of service log audits,
> explain what is entailed in the auditing process, identify who performs the audits
> (in-house or outsourced), and, identify when, if ever, Defendant's logs were
> audited, including the logs of Otabek Saydiev and Rizakulov Azamat.

> ANSWER: Defendant will supplement this interrogatory in accordance with the
> Federal Rules of Civil Procedure and the local rules of this Court.

> SUPPLEMENTAL ANSWER: Audits were performed by the HOS Department.

> SECOND SUPPLEMENTAL ANSWER: "HOS" is our Hours of Service
> department which monitors whether the hours recorded by drivers are accurate.
> This is performed by a third party vendor.

Doc. 227-1 at 2. I agree that this supplement fails to "explain what is entailed in the auditing

process," fails to identify the third-party vendor, and fails to "identify when, if ever, Defendant's

logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat." Nor did the

supplemental answer state that this information is not available to Defendant.

 In response to the present motion, Defendant attempts to provide yet another belated

supplement: it refers the Court to its answer to Interrogatory No. 5. Like most of its previous

supplements, Defendant's referral to its Interrogatory No. 5 answer is inadequate. Defendant's

Interrogatory No. 5 response stated: "A 'Samsara' electronic logging device ('ELD') was used

by Saydiev Otebek. The Samsara Hours of Service report for Saydiev Otebek from March 1

through March 28, 2020 has been previously produced . . . ." Doc. 232 at 1. A report from a

logging device, however, does not answer whether the logs were audited, who conducted any

audit that did take place (for instance, HOS or the third-party vendor), what auditing process was

used for any audit that did occur, or when any auditing occurred. In short, I agree with Plaintiff

that Defendant did not comply with the Court's order with respect to Interrogatory No. 2.

> Plaintiff also argues that the supplement to Interrogatory No. 3 remains deficient:
>
> INTERROGATORY NO. 3: With respect to the trailer operated by Otabek
> Saydiev at the time of the Subject Incident, identify the registered owner, mileage,
> and gross weight at the time of the Subject Incident; state the manufacturer,
> identification number, model number, and year of the ENGINE in the tractor; and
> identify all maintenance and repairs performed for the time period from 12
> months before the Subject Incident to present.
>
> ANSWER: Uni Trans is the owner of the trailer. Defendant will supplement this
> interrogatory in accordance with the Federal Rules of Civil Procedure and the
> local rules of this Court.
>
> SUPPLEMENTAL ANSWER: Trailer information:
> Trailer #2032920PLA – 5V8VC532XLT010638 – 1010 VNTC
> Owner: Star Leasing Co.
> Load Gross Weight: 7180 lbs.
> Truck information:
> Truck# 204 – 4V4NC9EH2LN239089 – 2020 VOLVO VNL
> Owner: Uni Trans, LLC, at the time of loss.
>
> SECOND SUPPLEMENTAL ANSWER: Additional Tractor Truck information:
> Chassis ID: NR 239089
> Engine Model #: D13 455HP 1850 LBFT
> Engine Serial #: D13/1274916
> Manufactured at Volvo's New River Valley Plant in Dunlin, Virginia on 9/26/19.

Doc. 227-1 at 1-2. Plaintiff argues Defendant still did not provide "all maintenance and repairs

performed for the time period from 12 months before the Subject Incident to present" nor did

Defendant state it did not have such information. Doc. 227 at 3-4. Plaintiff argues that

Defendant's 30(b)(6) deponent testified that such information is available. *Id.*; Doc. 227-2 at 9

(Beck dep. at 153:18-24).

Defendant argues that "the tractor involved in the accident was a 2020 Volvo built just months before the accident" and "there would have been an oil change on the tractor prior to the accident." Doc. 232 at 2. "Maintenance and repair of the tractor trailer is not an issue in this lawsuit. The accident occurred solely because Uni Trans driver appears to have been asleep while driving." *Id.* That is, Defendant argues that the information Plaintiff seeks is irrelevant.

Defendant's opportunity to make such an objection, however, expired long ago. Plaintiff served Interrogatory No. 3 on Defendant nearly one year ago, on May 12, 2022. Doc. 138 at 1. Since then, Defendant provided its initial response and then belatedly filed two supplemental responses. In none of its responses did Defendant object that the information Plaintiff requested was irrelevant. The Court should not further delay the completion of discovery by opening debate about the relevancy of Interrogatory No. 3. Through its lack of diligence Defendant has waived any objection to the relevancy of this interrogatory.[2]

The issue presently before the Court is whether Defendant complied with the Court's order to answer Interrogatory No. 3 or, alternatively, state that it lacked such information. Defendant did not comply with this order. Although Defendant's Rule 30(b)(6) witness and general manager, Jahongir Gaybullaev (aka, John Beck)[3] testified that the Fleet Department would have the maintenance records Plaintiff requested, Defendant did not provide them. Thus, Defendant failed to comply with the Court's order regarding Interrogatory No. 3.

---

[2] Plaintiff argued, however, that evidence that Defendant was "so deficient on maintenance and repairs" would show "that there is a claim there for punitive damages against them." Doc. 226 at 51. Plaintiff further argued: "Is there a claim for negligent maintenance of their vehicles? Does it show enough negligence over all to say that . . . there's just a lackadaisical approach to running this company in the first place." *Id.*

[3] Because the parties refer to Jahongir Gaybullaev by his alias, John Beck, the Court will do the same in this order.

Next, Plaintiff addresses Interrogatory No. 14.

INTERROGATORY NO. 14: Identify and explain all communications of any kind between Defendant and Otabek Saydiev, or anyone acting for or on behalf of Otabek Saydiev, during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

ANSWER: Communication was through Uni Trans dispatchers. Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

SUPPLEMENTAL ANSWER: Dispatchers.

SECOND SUPPLEMENTAL ANSWER: Saydiev Otebek reported the accident by calling a Uni Trans LLC dispatcher following the accident.

Doc. 227-1 at 6-7. Plaintiff argues that this response "lacked any of the detail requested, including time, persons involved, or any detail as to the general subjects." Doc. 227 at 5 (emphasis removed). Further, Plaintiff asserts, Beck's 30(b)(6) deposition testimony reveals that Beck "could find out who Otabek Saydiev spoke with, he would just have to ask, suggesting that, at least at that point in time, he had not bothered to ask." *Id.*

Beck's testimony reflected the possibility of finding the driver's Telegram messages to answer this question:

Q. So that is what I am wondering, is that I asked you, can you go back and look up these messages from that day, and you said you could.

A. My own.

Q. Okay. Not yours, though. I want to know if we can get the Telegram conversations between Otabek Saydiev and the people that he talked to at Uni Trans?

A. We can -- we can look it up, yeah.

Q. Okay. So what would you use to look it up?

A. I have to find out who talked to the guy. And then we need to go to that guy's Telegram, back three years ago, and then see what the kind of conversation they had.

Q. Okay. And so how do you find out who it was that talked to Otabek three years ago?

A. I have to ask, you know.

Q. Okay. So you are just going to ask around and see who talked to him?

A. Yeah. Yeah, we have to figure out . . .

Doc. 227-2 at 12 (Beck dep. at 162:5-25). Defendant argues that:

> Uni Trans' "Telegram" messages have been produced. They were read to Plaintiff's counsel at the deposition of John Beck on January 17, 2023. Uni Trans did not delete any of the Telegram messages. According to John Beck, senders of messages on Telegram can delete their own messages and for this reason messages from Otabek Saydiev, if any, may have been deleted by him. The Telegram messages produced do not reflect communications between Uni Trans representatives and Otabeck Saydiev and therefore are not responsive to any of Plaintiff's requests for production

Doc. 232 at 2. In reply, Plaintiff emphasizes that the Telegram messages were not provided until February 21, 2023. Doc. 234 at 1.

The question before the Court is whether Defendant complied with the Court's order to fully answer Interrogatory No. 14 or state that the information is not available. Defendant did neither. The deposition testimony further suggests that Defendant did not make a reasonable or timely investigation of other Uni Trans employees' Telegram messages. I find that, despite Defendant eventually producing some Telegram messages, Defendant has failed to fully and timely answer Interrogatory No. 14.

Next, Plaintiff argues that Defendant failed to fully respond to Request for Production No. 18 and Request for Production No. 26, which sought identification and production of Defendant's policies, procedures, rules, guidelines, directives, manuals, handbooks, and instructions governing Otabek Saydiev's conduct. Doc. 227 at 6. Plaintiff states that in its January 16, 2023 Fourth Supplemental Responses, Defendant provided for the first time its Fleet Safety Policy. *Id.* But, Plaintiff argues, Defendant failed to provide its (1) Drug and Alcohol

Policy Guidebook, (2) Emergency Response Guidebook, and (3) Driver Handbook and Safety Manual, which were all given to Otabek Saydiev upon hiring with Defendant. *Id.* In response, Defendant claims it "has produced the manuals requested." Doc. 232 at 2. In reply, Plaintiff states that Defendant produced them February 23, 2023, the same day Defendant filed its response. Doc. 234 at 1. I agree with Plaintiff that this production was untimely and violated multiple Court orders (described above) that required earlier production.

Interrogatory No. 28 asked Defendant Uni Trans to describe if it had performed any review or investigation of the subject incident. Doc. 227 at 6. Defendant supplemented its answers to state there was no formal review. *Id.* Plaintiff contends that, "In Defendant's 30(B)(6) deposition it was discovered that in fact, there was what was described as a detailed review of the subject accident. There was a whole group conversation on the deponent's cell phone in the Telegram application between multiple employees and departments of Defendant related to the subject accident. While the group conversation was reviewed in deposition, it has yet to be produced." *Id.* at 7. These messages were apparently read out loud during a January 17, 2023 deposition and Defendant apparently produced these messages on February 21. Doc. 232 at 3; Doc. 234 at 1. I find again that the production was untimely and violated multiple Court orders that required earlier production.

Request for Production Nos. 29 and 32 requested all training materials, including presentation materials prepared by and/or presented by Defendant. Doc. 227 at 3. In its January 16, 2023 Fourth Supplement, Defendant stated it had produced all responsive documents. Doc. 227-1 at 14-15. The corporate representative subsequently testified that a PowerPoint presentation was presented to all new hires and that the presentation was readily available. Doc. 227 at 7. Defendant produced the PowerPoint presentation on February 23. Doc. 232 at 10; Doc.

14

34 at 1. I find again that the production was untimely and violated multiple Court orders that required earlier production.

Request for Production No. 34 sought all lease contracts applicable to Defendant. Doc. 227 at 7-8. Plaintiff suggests that Defendant is hiding its connection to a company called DM World, noting that, although the corporate representative testified about this company, Defendant produced no documents about this company. *Id.* Plaintiff also argues that "there is evidence to suggest they may be altering documents to avoid ties to DM World." *Id.* Defendant represents that "the tractor involved in the accident, unit 2004, was not subleased from DM World." Doc. 232 at 4. Defendant states it "fully responded to requests for leases having any connection to the accident in question." *Id.* In other words, Defendant asserts that it provided Plaintiff with the documents it has deemed to be relevant. Again, however, Defendant's time to raise relevancy objections has long passed.[4] As the Court previously ordered, Defendant is obligated to provide the records Plaintiff has requested or to certify that it has been unable to locate such records after having conducted a diligent search.

Plaintiff's full request for production stated: "A copy of all lease and trip lease contracts applicable to Defendant Uni Trans and/or any vehicle involved in the Subject Incident." Doc. 138-1 at 25.[5] Leases between DM World and Defendant appear to be responsive to this request, as Plaintiff argues. I find that Defendant failed to fully respond to this request for production.

Request for Production No. 44 seeks Defendant's tax returns from the last five years. In its Fourth Supplement, Defendant responded simply "none." Doc. 227 at 8. Plaintiff explains:

---

[4] Even if Defendant had not waived its relevancy objection, I would be hesitant to accept that objection given Plaintiff's concern that Defendant is attempting to hide assets it has transferred to other companies.

[5] Defendant's initial responses incorrectly referred to this as Request for Production No. 32.

> In the deposition of the owner of Defendant (transcript yet to be available), the owner testified that he believed Defendant had an extension to file, possibly related to COVID 19. However, the tax returns should be from 2019, 2020, 2021 and 2022. Defendant denies being in business prior to 2019 (although there are financials sent to Star Leasing which claim it was making profits in 2018). There is no tax extension beyond October the following year of which Plaintiff is aware and the COVID 19 based tax extension ended July 15, 2020. It seems Defendant is either withholding its returns or admitting to a federal crime.

*Id.* at 8-9. The Court ordered Defendant to produce its tax returns, but Defendant's counsel's representation that Defendant has no tax returns to produce is a complete response to a request for production. I therefore recommend denying Plaintiff's motion with respect to tax returns.

## II.   Discussion

Defendant does not contest that it is liable for Plaintiff's injuries. It admits that its former driver fell asleep at the wheel and caused the crash that injured Plaintiff. *E.g.*, Doc. 232 at 5. Defendant does not concede, however, that it is liable for any conduct on the part of its driver that could give rise to punitive damages. This case, therefore, is much more about damages than liability.

And, related to the issue of what damages are appropriate, is the issue of what damages are collectible. Defendant represents "in 2020, Uni Trans settled the two death claims and one of the personal injuries claims for the limits of liability coverage, less $5,000, available under Uni Trans insurance policy. As a result, there is essentially no insurance coverage available to pay the judgement the Estate of Mr. Gutierrez will ultimately obtain against Uni Trans." Doc. 232 at 6. Further, Beck testified that, four days after this accident, at his direction, his wife formed a new entity named "Unitrans LLC". *Id*. at 7. The reason he set up this company, he testified is because he was concerned that this accident would cause Uni Trans to have a failing safety rating that would cause it to go bankrupt. *Id*. By operating under "Unitrans" rather than "Uni Trans" "if

something happens on the road, like violation, ticket, speeding, so Unitrans without space gets the blame." *Id*.

Not surprisingly, then, it appears Plaintiff has geared much of his discovery toward determining whether Defendant itself acted recklessly (and could therefore be liable for punitive damages), whether evidence exists through which Defendant could be liable for its driver's reckless conduct, and whether Defendant has assets or an alter ego with money that could be used to satisfy a judgment against Defendant. Because Defendant continues to withhold from Plaintiff discovery the Court has repeatedly ordered Defendant to produce, I recommend that the Court enter default judgment against Defendant, order that Defendant pay Plaintiff's costs and expenses described at the end of this Order, and hold Defendant in civil contempt, assessing a fine against it of $1,000, payable to Plaintiff, for each day after the Court enters its civil contempt order that Defendant fails to fulfill its discovery obligations.

A.   Legal standard

Rule 37 permits a court to sanction a party for failing to obey a court's discovery order. Fed. R. Civ. P. 37(b)(2)(A). Permissible sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* R. 37(b)(2)(C). In addition, if a party fails to disclose or supplement information as required by Rule 26(a) or (e), the Court may impose other sanctions including "payment of the reasonable expenses, including attorney's fees, caused by the failure" or "inform[ing] the jury of the party's failure." *See* Fed. R. Civ. P. 37(c)(1)(A)-(C).

The choice of sanctions for violating a court order lies within the district court's discretion. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

> The district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery. Before choosing [default judgment] as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the [plaintiff]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that [default judgment] would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Id.* at 920-21 (cleaned up).

This is a highly fact-intensive inquiry. *See Lee v. Max Intern., LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (internal citation omitted). Ultimately, "the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery." *Ehrenhaus*, 965 F.2d at 920.

Dismissal or default judgment "is a severe sanction reserved for the extreme case, and is only appropriate where a lesser sanction would not serve the ends of justice." *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (internal quotation marks omitted). "Because

18

dismissal with prejudice [or default judgment] defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Ehrenhaus*, 965 F.2d at 920 (internal quotation marks omitted); *compare Maples v. Vollmer*, Civ. No. 12-0294 JB/RHS, 2013 WL 1009558 (D.N.M. Mar. 5, 2013) (denying defendants' motion to dismiss based on plaintiff's apparently contradictory answers to interrogatories and questions in deposition), *with Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174 (10th Cir. 2009) (affirming district court's dismissal of case based on plaintiff's intentional fabrication or falsification of at least four documents she produced during discovery and her "evasive [and] inconsistent answers" during the hearing on the motion to dismiss), *Lee*, 638 F.3d 1318 (affirming district court's dismissal of case when plaintiffs failed to produce documents in response to a discovery request and violated two judicial orders compelling production of the documents), *and Freddie v. Marten Transp., Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011)[6] (affirming district court's dismissal when plaintiff in personal injury case lied in his deposition and answers to written discovery about his preexisting injuries and conditions and repeatedly failed to provide information about his past medical providers).

    B.    <u>Analysis of *Ehrenhaus* factors</u>

        1.    <u>The degree of actual prejudice to the plaintiff</u>

    Because Defendant concedes liability based on the fact that its driver fell asleep at the wheel and that this caused the accident in which Robert Gutierrez was killed, Defendant's discovery violations have not prejudiced Plaintiff's ability to demonstrate Defendant's liability. Nor does Plaintiff argue otherwise. In his motion, Plaintiff's entire prejudice argument consists

---

[6] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

of the following sentence: "Defendant's failure to comply with written discovery has absorbed significant resources, including in the form of review of written discovery to organize what it has or has not answered; preparation and attempts at good faith communications; briefing; hearing attendance; travel coordination for depositions that are repeatedly cancelled; and travel costs for depositions at which deponents are not prepared." Doc. 227 at 9-10.

Plaintiff's characterization of how he has been prejudiced does little to support the sanctions he requests. Although Plaintiff seeks a default judgment, he does not explain how Defendant's discovery violations have impaired his ability to prove liability. And the prejudice he claims he has suffered—the unnecessary expenditure of resources—has no bearing on the issue of liability. To the extent Defendant has caused Plaintiff to expend resources unnecessarily, requiring Defendant to compensate Plaintiff for his unnecessary expenditure of resources seems better-tailored to address the harm Plaintiff claims he has suffered. Similarly, Plaintiff fails to connect the prejudice he claims he suffered to the additional sanctions he requests. Specifically, the sanction of a jury instructions related to Defendant's net worth and failure to produce communications are not related to the prejudice Plaintiff claims he has suffered—the unnecessary expenditure of his resources.

In addition to the one-sentence Plaintiff devotes to the issue of prejudice in his brief, however, Plaintiff alleged other forms of prejudice at the January 11 hearing. For example, Plaintiff argued that, if Saydiev had called the Uni Trans dispatcher right after the accident and confessed to using marijuana, that would support a punitive damage award. Doc. 226 at 62.

These hypothetical facts would support a punitive damage award against Saydiev. But Saydiev is no longer a defendant.[7]

To determine whether Defendant's discovery violations might have prejudiced Plaintiff's ability to obtain evidence that would support his request for punitive damages, the Court must consider the ways in which a corporation may be held liable for punitive damages. "A corporation may be held liable for punitive damages for the misconduct of its employees if: (1) corporate employees possessing managerial capacity engage in conduct warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 21, 140 N.M. 478, 486; *see also* NMRA UJI 13-1827. Unless Plaintiff also had evidence satisfying the above test (that Saydiev was a managerial employee; that Defendant knew of the drug use before allowing Saydiev to drive for them; or that Defendant ratified the drug use after the accident), Plaintiff's hypothetical facts would not support a punitive damages award against Defendant. Here, even assuming the truth of Plaintiff's hypothetical (that Saydiev threw marijuana out the window), Plaintiff does not explain (and I cannot make arguments for Plaintiff) how such evidence could support a punitive damage award *against Defendant*.

Other arguments Plaintiff made at the January 11 hearing, however, fare better. For instance, he indicated that some of the discovery sought, such as tractor-trailer maintenance and repair records, could demonstrate Defendant had "a lackadaisical approach to running this

---

[7] On October 8, 2021, the Court dismissed Defendant Saydiev without prejudice for failure to serve. Doc. 78.

company in the first place." Doc. 226 at 51. The Court interprets Plaintiff's argument to be that, if discovery demonstrates that Defendant was not taking safety precautions that it should have, such evidence would support his claim of punitive damages. And, as Plaintiff noted at the hearing, not knowing what might be in the documents Defendant never provided makes it difficult for him to demonstrate exactly how not receiving those documents has prejudiced him. *Id.* at 24; *cf. Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1202 (D. Utah 2011) (a party's "intentional destruction of the evidence would be rewarded were the court to hold [the aggrieved party] to a strict standard of proving the destroyed files' content and whether its destruction prejudiced [its] case.").

Evidence that Defendant's managerial employees flouted safety measures designed to prevent accidents such as this could lead to a punitive damage award against Defendant. It is true that Plaintiff has presented little argument about how the discovery he seeks could establish a causal connection between the action or inaction of Defendant's managerial employees and the accident that occurred in this case. Nonetheless, much of the discovery Plaintiff seeks (information regarding hours of service log audits; tractor maintenance; employee training; company policies, procedures, rules, guidelines, directives, manuals, and handbooks; and communications with the driver) is geared toward learning about *Defendant's* conduct leading up to this accident. Defendant's refusal to provide Plaintiff this information has prejudiced Plaintiff.

Defendant's refusal to provide information about its financial status has also prejudiced Plaintiff. As noted above, Beck acknowledged that, shortly after this accident, his wife established a new company named "Unitrans" (no space between "Uni" and "trans"). Doc. 232 at 6-7. Beck further testified that he understood this accident might cause Defendant to have a failing safety rating that could cause Defendant to go bankrupt. *Id.* at 7. Beck indicated that

"Unitrans" was established to continue Defendant's operations, because Defendant had a three-year lease and needed to survive. *Id.*

Plaintiff argues that "Defendant Unitrans, L.L.C. is simply an alter ego created so the Defendant Uni Trans could escape the consequences of its poor safety rating and continue to carry loads and turn profits." Doc. 261 at 2. Plaintiff also argues that Defendant has ties to a company named DM World and has altered financial documents in an attempt to conceal those ties. Doc. 227 at 8. Given Defendant's representation that it does not have the insurance coverage necessary to pay a significant judgment in this case, Defendant's refusal to respond to discovery requests related to its financial status and connection to other companies that may have assets has prejudiced Plaintiff. *See* Doc. 232 at 6 (representing that less than $5,000 remains available under its insurance liability policy).

2.      The amount of interference with the judicial process

The Federal Rules of Civil Procedure are designed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The refusal of one party to engage in the discovery process these rules contemplate thus prevents the just, speedy, and inexpensive determination of the case and significantly interferes with the judicial process. During the time now Supreme Court Justice Neil Gorsuch served as a judge for the Tenth Circuit, he wrote:

> Back in 1937 the drafters of the Federal Rules promised that their project would help ensure "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. To date, that promise remains elusive, more aspirational than descriptive. But it is surely the case that if court orders can be repeatedly flouted we will only retreat further from the goal. When a party feels at liberty to disobey not just a discovery request but two court orders compelling production of the same material in its control, weeks or months (as in this case) pass without progress in the litigation. Hours, days, weeks of lawyers' time are consumed at great expense. Focus shifts from the merits to the collateral and needless. This is not speedy, inexpensive, or just. Just the opposite. And no doubt tolerating such behavior would encourage only more of it. But there is such thing as discovery

23

> karma. Discovery misconduct often may be seen as tactically advantageous at
> first. But just as our good and bad deeds eventually tend to catch up with us, so do
> discovery machinations. Or at least that's what Rule 37 seeks to ensure.

*Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011). As was the case in *Lee*, Defendant

here has repeatedly disobeyed court orders compelling discovery. And, as was the case in *Lee*,

under Rule 37, such disobedience has consequences.

I find that Defendant's interference with the judicial process has been high, as outlined

above. This case has gone on for over two years and Defendant has yet to provide discovery

Plaintiff requested more than a year ago. This weighs in favor of sanctions. *See Maples v.*

*Vollmer*, No. 12cv294 JB/RHS, 2013 WL 1009558, at *21 (D.N.M. Mar. 5, 2013) (collecting

cases).

3.    <u>The culpability of the litigant</u>

I find Defendant is culpable for the discovery violations and delay in this case. *E.g.*, Doc.

226 at 9 (defense counsel stating he did not timely schedule depositions because his client did

not get back to him); *id.* at 15 (defense counsel stating "my client is not purposefully holding

back on anything but they're not great at communicating with me"); *id.* at 27 (defense counsel

stating he does not know if his client took any steps to locate the Verizon tablet after the

accident); *id.* at 61 (defense counsel does not know why his client did not provide "the name of

the dispatcher that worked for your client's company"); *id.* at 86 (Mr. Beck simply does

understand when requests for information are made). As the Court explained at the hearing, a

defendant cannot choose to do business in the United States and then credibly claim a lack of

understanding to excuse itself from demands attendant to the United States' legal system. Indeed,

Tenth Circuit has held, "a party's thrice repeated failure to produce materials that have always

been and remain within its control is strong evidence of willfulness and bad faith." *Lee v. Max*

*Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011).

24

I also find Defendant is culpable, because as outlined above, the Rule 30(b)(6) deposition demonstrates that the company possessed discoverable information and simply did not perform a proper investigation to find it.

> 4.   Whether the court warned the party in advance that default judgment would be a likely sanction for noncompliance

The Court warned Defendant, multiple times, and well in advance of its noncompliance, that default judgment was a possible sanction. Doc. 154 at 5 (Order dated August 26, 2022); Doc. 201 at 3 (Order dated December 22, 2022). As outlined above, non-compliance continued through and after the Court hearing on January 11, wherein the Court extensively discussed the factors relevant to entering default judgment as a sanction and invited argument on them from both parties.

> 5.   The efficacy of lesser sanctions

A default judgment is a harsh sanction in the normal case but, in this case, Defendant has admitted vicarious liability for negligence causing Plaintiff's damages. Therefore, here, default judgment is not a particularly harsh sanction. The Tenth Circuit has affirmed dismissal with prejudice (the inverse of a default judgment sanction, depending on the party found to have committed the violation) in *Lee v. Max International, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011). In *Lee*, the plaintiffs "disobeyed two orders compelling production of the same discovery materials in its possession, custody, or control." *Id.* at 1321. They "were given no fewer than three chances to make good their discovery obligation: first in response to Max's document requests, then in response to the October 2009 order, and finally in response to the January 2010 order. Plaintiffs failed at all three turns. And three strikes are more than enough to allow the district court to call a litigant out." *Id.*

Defendant's conduct here is even more egregious than in *Lee* because Defendant still has not fully complied with court orders. Its first opportunity to comply with the rules arose on June 28, 2022 when responding to Plaintiff's discovery requests. Defendant then violated two court orders, Docs. 154 & 214, and most problematically, *continues* to violate the orders. As outlined above, Defendant did not perform a reasonable investigation and did not timely supplement its answers as ordered by Doc. 154. Although Defendant then produced (untimely) some documents as ordered by Doc. 214, Defendant's production was, and still is, incomplete. Thus, under *Lee*, a dispositive order (default judgment) is appropriate.

I therefore recommend that the presiding judge enter default judgment against Defendant. Further, I recommend that sanctions in addition to default judgment are justified. The threat of default judgment does little to motivate a recalcitrant defendant who has already admitted liability. If the penalty to a defendant that admits liability but withholds discovery related to damages is limited to assuming liability the defendant has already conceded, that defendant stands to strengthen its position through noncompliance with rules and orders that require the production of information related to damages.

Because damages, not liability, are at issue in this lawsuit, default judgment alone is an ill-suited sanction. Therefore, in addition to recommending default judgment, I recommend holding Defendant in civil contempt and requiring it to pay a fine for each day it further delays providing the discovery the Court long ago ordered it to provide. By separate order I will certify facts for the Court's consideration regarding Defendant's contempt of Court. Further, I recommend that the Court grant Plaintiff's request for costs associated with the sanctions motion. *See* Fed. R. Civ. P. 37(b)(2)(A), (C) ("If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," "the court must order the disobedient

party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

This leaves Plaintiff's request for the following jury instructions:

Defendant has actively hidden documentation related to its net worth. For the purpose of evaluating punitive damages, the jury may assume that Defendant has withheld its proper value and the jury may assume its value without evidence establishing that value.

Defendant has failed to produce and/or preserve critical documents depicting communications following the subject accident. The jury may assume those documents are against the interests of Defendant.

Doc. 227 at 11. These requested instructions suffer from vagueness. Plaintiff's proposed instruction on Defendant's net worth invites the jury to speculate about what documents are "hidden" and what Defendant's net worth might be. An adverse inference instruction should not be an invitation for the jury to engage in speculation. Similarly, Plaintiff's proposed instruction that the jury may assume unspecified documents Defendant has failed to produce are against unspecified interests of Defendant would provide little guidance and invite speculation. The undersigned leaves to the discretion of the presiding judge whether Plaintiff should be able to later offer alternative instructions for the Court's consideration.

In sum, I recommend: (1) the entry of a default judgment against Uni Trans L.L.C.; (2) Defendant pay Plaintiff's costs incurred in connection with the two sanctions motions; (3) the Court hold Defendant in contempt of court (for which I certify facts to the district judge by separate order); and (4) that the Court deny, without prejudice, Plaintiff's request for jury instructions.

## RECOMMENDATIONS

For the reasons discussed above, I recommend the Court rule as follows:

- GRANT Plaintiff's request for attorney's fees in connection with the sanctions motions;

- DENY Plaintiff's request for jury instructions; and

- GRANT Plaintiff's request for default judgment.

SO ORDERED.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**