## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BOBBY GUTIERREZ, in his capacity as
Wrongful Death Personal Representative of the
Estate of ROBERT P. GUTIERREZ,

       Plaintiff,

       v.                               Civ. No. 21-73 KWR/SCY

UNI TRANS, L.L.C, UNITRANS, L.L.C.,
CEVA LOGISTICS U.S., INC., and
SHAMROCK TRADING CORPORATION,

       Defendants.

## ORDER CERTIFYING FACTS FOR CIVIL CONTEMPT
## PURSUANT TO 28 U.S.C. § 636(e)(6)

This matter comes before the Court on (1) Plaintiff's November 11, 2022 Second Motion To Compel Discovery Answers And Responses To Plaintiff's First Set Of Written Discovery From Defendant Uni Trans, L.L.C., Depositions, And For Sanctions, Doc. 181; and (2) Plaintiff's February 13, 2023 Supplemental Motion For Sanctions Stemming From Its Motions To Compel Discovery Answers And Responses And Depositions From Defendant Uni Trans L.L.C., Doc. 227. In a memorandum of proposed findings and recommended disposition that I am filing simultaneously with this Order Certifying Facts, I recommend that the Court issue a civil contempt order designed to force Defendants to comply with the Court's discovery orders. The present order certifies facts that would serve as a predicate to a finding of civil contempt against Defendant Uni Trans, L.L.C. (hereinafter "Defendant").

## I.    Legal Standard

Contempt may be civil, criminal, or both. *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 499 (10th Cir. 1980). The distinction between civil contempt and

criminal contempt "turns on the character and purpose of the sanction." *Dartez v. Peters*, 759 F. App'x 684, 689 (10th Cir. 2018)[1] (internal quotation marks omitted). Civil contempt is "remedial, and for the benefit of the complainant," while criminal contempt is "punitive, to vindicate the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994).

"A fine is a civil sanction" if it is "compensatory or coercive." *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1025, 1029 (10th Cir. 1998). A compensatory fine "must of course be based upon evidence of complainant's actual loss." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). "But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.*

In *Law*, the Tenth Circuit explained that civil remedial contempt encompassed "contempt of court for violating a restraining order that specifically provided the defendants would be held in contempt and fined a fixed amount if they violated the order." 134 F.3d at 1029 (citing *Pro-Choice Network of W. N.Y. v. Walker*, 994 F.2d 989, 995 (2d Cir. 1993)). The Tenth Circuit then held that the portion of the lower court's order imposing daily fines on the defendant—payable to the plaintiffs, *id.* at 1029—which defendant "had the opportunity to avoid" by complying with the court's order "was coercive and civil." *Id.* at 1030.

---

[1] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

Magistrate judges have limited contempt authority. 28 U.S.C. § 636(e). A magistrate judge acting under 28 U.S.C. § 636(b)(3) lacks authority over civil contempt. *See* 28 U.S.C. § 636(e)(6)(B). Rather, the magistrate judge

> shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

*Id.* § 636(e)(6).

"Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue an order of contempt." *E.E.O.C. v. Midwest Health, Inc*., No. 12mc240, 2013 WL 1502075, at *1 (D. Kan. Apr. 11, 2013). A certification of facts "serve[s] the function of a charging instrument or pleading for a trial to be held before the district judge." *Taberer v. Armstrong World Indus., Inc*., 954 F.2d 888, 903 (3d Cir. 1992). After certification, "[t]he district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." 28 U.S.C. § 636(e)(6).

## II.    Certification of Facts

1.      Plaintiff served his First Set of Interrogatories and Requests for Production to Defendant Uni Trans on May 12, 2022. Doc. 138 at 1.

2.      Defendant served its responses on June 28, 2022. *Id.*; Doc. 138-1. For the most part, the responses contained nothing of substance; instead, Defendant's responses mostly consisted of boilerplate promises to supplement at an unspecified time. *Id.*

3.      By order dated August 26, 2022, the Court found that "Defendant failed to answer the discovery requests within the meaning of Rule 37(a)(4)." Doc. 154 at 2. The Court explained:

When responding to discovery, "Counsel has an obligation to assure that the client complies with discovery obligations and court orders and, thus, *careful inquiry by counsel* is mandated in order to determine the existence of discoverable documents and to assure their production." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1229 (10th Cir. 2015) (internal quotation marks and alterations omitted; emphasis in original). "Trial counsel must exercise some degree of oversight to ensure that a client's employees, including in-house counsel are acting competently, diligently and ethically in order to fulfill their responsibility to the Court with respect to discovery." *Id.* (internal quotation marks and alterations omitted). "By signing disclosures required under Rule 26(a), counsel certifies that "to the best of [his] knowledge, information, and belief formed after a reasonable inquiry," a disclosure "is complete and correct as of the time it is made." *Id.* (quoting Fed. R. Civ. P. 26(g)(1)(A); alterations in original); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 626 (D. Colo. 2007).

Doc. 154 at 3.

4.      This August 26 order required

Defendant to serve amended responses to Plaintiff's Interrogatories and Requests for Production which do not rely on a promise to supplement. If, after a reasonable inquiry as described by *Sun River Energy*—in this case, one that includes full communication with counsel's clients, in person if necessary—no responsive information is obtained, Defendant may so state. The Court cautions Defendant, however, that the failure to timely provide responsive information could result in a variety of sanctions to include, in the most extreme case, entry of judgment against Defendant. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). An assertion that Defendant intends to make a reasonable inquiry in the future will not suffice. The time for Defendant and Defendant's counsel to make reasonable inquiry has long passed.

Doc. 154 at 5. The Court further ordered Defendant to pay Plaintiff's costs in bringing the motion. *Id.* at 5-6; Doc. 157.

5.      The Court ordered that "Defendant shall serve amended discovery answers pursuant to the instructions outlined above within 14 days of the date of this Order." Doc. 154 at 6. Fourteen days from this August 26 order was September 9, 2022.

6.      Defendant did not serve amended discovery answers on or before September 9, 2022.

4

7.     On November 11, 2022, Plaintiff filed another motion to compel relating to Plaintiff's first set of written discovery. Plaintiff informed the Court that, as of November 11, Defendant still had not complied with the Court's order to supplement its responses. Doc. 181 at 1.

8.     Defendant filed its response to the Motion to Compel on November 23, Doc. 191, and, on the same day, served supplemental answers to Plaintiff's first set of discovery, Doc. 190.

9.     In reply, Plaintiff agreed that the supplementation resolved some disputes, but raised concerns with the supplemental answers, stating that many remained incomplete, and noted that no supplementation was provided for many other requests at issue in its original motion to compel. Doc. 201 at 4. The Court set a hearing for January 11, 2023 to determine the extent to which Defendant's supplemental responses remained incomplete. Doc. 201 at 4-5.

10.     At the hearing, the Court and counsel for both parties addressed the outstanding discovery disputes at length. Doc. 226 at 14-79. With one exception (*id.* at 62-66), the Court agreed with Plaintiff that Defendant's answers were insufficient. Defendant's counsel agreed to supplement the responses to indicate, where appropriate, that no further responsive information existed. The Court ruled that the supplement would be due before several upcoming (but long-delayed) depositions. This would provide Plaintiff information needed to prepare for the depositions and would reduce the likelihood of Plaintiff being unfairly surprised by previously requested information being belatedly presented for the first time at a deposition. *Id.* at 34. Specifically, the Court ordered supplementation to take place by the Monday of the week of the scheduled depositions. *Id.* at 56-57. The Court also overruled most of Defendant's objections to Plaintiff's requested discovery. *Id.* at 77-78.

11.      On January 13, 2023, the Court issued a written order following the hearing that ordered Defendant to supplement its discovery answers "to either produce fully responsive information or state that all information in Defendant's possession has been disclosed" with respect to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 14, 18, 20, 22, 25, 26, and 28; and Request for Production Nos. 13, 14, 20, 27, 28, 29, 30, 32, 33, 35, 36, 38, 39, 41, and 44. Doc. 214 at 1-2. "The supplementation and verification is due by close of business Mountain time, Monday January 16, 2023." *Id.* at 2.

12.      Defendant served its Fourth Supplemental Responses to Plaintiff's first set of discovery on January 16, 2023. Doc. 227 at 4; *see also* Doc. 217. However, these supplemental responses did not fully comply with the Court's orders.

13.      Plaintiff's Interrogatory No. 2 stated:

INTERROGATORY NO. 2: If Defendant performs hours of service log audits, explain what is entailed in the auditing process, identify who performs the audits (in-house or outsourced), and, identify when, if ever, Defendant's logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat.

ANSWER: Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

SUPPLEMENTAL ANSWER: Audits were performed by the HOS Department.

SECOND SUPPLEMENTAL ANSWER: "HOS" is our Hours of Service department which monitors whether the hours recorded by drivers are accurate. This is performed by a third party vendor.

Doc. 227-1 at 2. The supplemental answer failed to "explain what is entailed in the auditing process," failed to identify the third-party vendor, and failed to "identify when, if ever, Defendant's logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat." Nor did the supplemental answer state that this information was not available to Defendant after a reasonable investigation.

14.    In briefing before the Court, Defendant argued that its answer to Interrogatory No. 2 was complete by virtues of its answer to Interrogatory No. 5. Doc. 232 at 1. Defendant's Interrogatory No. 5 response stated: "A 'Samsara' electronic logging device ('ELD') was used by Saydiev Otebek. The Samsara Hours of Service report for Saydiev Otebek from March 1 through March 28, 2020 has been previously produced . . . ." Doc. 232 at 1. A report from a logging device, however, would not answer whether the logs were audited, who conducted any audit that did take place (for instance, HOS or the third-party vendor), what auditing process was used for any audit that did occur, or when any auditing occurred.

15.    Defendant did not comply with the Court's orders to conduct a reasonable inquiry as described by *Sun River Energy* and to either produce fully responsive information or state that all information in Defendant's possession has been disclosed with respect to Interrogatory No. 2.

16.    Plaintiff's Interrogatory No. 3 stated:

INTERROGATORY NO. 3: With respect to the trailer operated by Otabek Saydiev at the time of the Subject Incident, identify the registered owner, mileage, and gross weight at the time of the Subject Incident; state the manufacturer, identification number, model number, and year of the ENGINE in the tractor; and identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

ANSWER: Uni Trans is the owner of the trailer. Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

SUPPLEMENTAL ANSWER: Trailer information:
Trailer #2032920PLA – 5V8VC532XLT010638 – 1010 VNTC
Owner: Star Leasing Co.
Load Gross Weight: 7180 lbs.
Truck information:
Truck# 204 – 4V4NC9EH2LN239089 – 2020 VOLVO VNL
Owner: Uni Trans, LLC, at the time of loss.

SECOND SUPPLEMENTAL ANSWER: Additional Tractor Truck information:
Chassis ID: NR 239089
Engine Model #: D13 455HP 1850 LBFT
Engine Serial #: D13/1274916

Manufactured at Volvo's New River Valley Plant in Dunlin, Virginia on 9/26/19.

Doc. 227-1 at 1-2.

17.     Defendant's supplement did not provide "all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present" nor did Defendant state it did not have such information after a reasonable investigation. Doc. 227 at 3-4.

18.     By failing to timely answer or object to this interrogatory, Defendant waived any relevancy objection.

19.     Defendant did not comply with the Court's orders to conduct a reasonable inquiry as described by *Sun River Energy* and to either produce fully responsive information or state that all information in Defendant's possession has been disclosed with respect to Interrogatory No. 3.

20.     Plaintiff's Interrogatory No. 14 stated:

INTERROGATORY NO. 14: Identify and explain all communications of any kind between Defendant and Otabek Saydiev, or anyone acting for or on behalf of Otabek Saydiev, during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

ANSWER: Communication was through Uni Trans dispatchers. Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

SUPPLEMENTAL ANSWER: Dispatchers.

SECOND SUPPLEMENTAL ANSWER: Saydiev Otebek reported the accident by calling a Uni Trans LLC dispatcher following the accident.

Doc. 227-1 at 6-7.

21.     Defendant's supplemental response lacked any of the detail requested, including time, persons involved, or any detail as to the general subjects.

22.     Defendant's 30(b)(6) deponent, John Beck, testified on January 17, 2023 that he could find out who Otabek Saydiev communicated with in the company, he would just have to ask. Doc. 227-2 at 12 (Beck dep. at 162:5-25).

23.     In briefing before the Court, Defendant argued that Uni Trans' "Telegram" messages have been produced." Doc. 232 at 2. Defendant stated: "The Telegram messages produced do not reflect communications between Uni Trans representatives and Otabeck Saydiev and therefore are not responsive to any of Plaintiff's requests for production." *Id.* Defendant's brief did not address whether Beck took the steps mentioned in his deposition to find other, responsive, communications.

24.     Defendant's supplemental answer did not state that all responsive information in Defendant's possession, custody, or control had been produced.

25.     Defendant did not comply with the Court's orders to conduct a reasonable inquiry as described by *Sun River Energy* and to either produce fully responsive information or state that all information in Defendant's possession has been disclosed with respect to Interrogatory No. 14.

26.     Plaintiff's Request for Production No. 34[2] requested

A copy of all lease and trip lease contracts applicable to Defendant Uni Trans and/or any vehicle involved in the Subject Incident.

Doc. 138-1 at 25.

27.     Plaintiff contended that, although the corporate representative on January 17, 2023 testified about subleases with a company called DM World, Defendant produced no documents about this company. Doc. 227 at 7-8.

---

[2] Defendant inadvertently misnumbered this as Request for Production No. 32 in its responses. *See* Doc. 181 at 5.

28.     In briefing before the Court, Defendant represented that "the tractor involved in the accident, unit 2004, was not subleased from DM World." Doc. 232 at 4. Defendant stated it "fully responded to requests for leases having any connection to the accident in question." *Id.*

29.     Defendant waived this relevancy objection by failing to timely raise it in its initial answers to Plaintiff's first set of discovery. Doc. 138-1 at 25. (The misnumbering of Request for Production No. 34 does not alter the fact that Defendant waived the objection by failing to raise it in its answers to Request for Production No. "32".) Therefore, Defendant has an obligation to produce all *responsive* documents for "all lease and trip lease contracts applicable to Defendant Uni Trans," including subleases with DM World, whether pertaining to the trailer involved in the accident or not.

30.     The Court's January 13, 2023 order did not require Defendant to fully answer Request for Production No. 34 or state that all responsive information had been produced. Doc. 214. That is because—*prior* to taking the deposition of the corporate representative—Plaintiff agreed that one of Defendant's supplemental productions resolved this issue. Doc. 196 at 8. The corporate representative's deposition, however, revealed that Defendant had not actually provided full discovery in its supplemental production. Therefore, while the failure to produce leases with DM World does not violate the letter of the January 13, 2023 order, it certainly violates the Court's orders in spirit.

31.     In addition, Defendant's response to Request for Production No. 34 violates the Court's August 26, 2022 order. This August 26 order required Defendant to conduct a reasonable inquiry as described by *Sun River Energy* and to amend its discovery responses by September 9, 2022 with respect to Request for Production No. 34. To date, Defendant still has not done so.

## III.    Conclusion

The above-certified facts demonstrate that Defendant is not in compliance with the

Court's multiple orders regarding Plaintiff's first set of discovery. The undersigned recommends

the Court order Defendant to pay a fine, payable to the Plaintiff, of $1,000 for every day that

Defendant does not cure the following deficiencies:

- A full response to Plaintiff's Interrogatory No. 2, either (1) explaining what is entailed in the auditing process, identifying the third-party vendor, and identifying when, if ever, Defendant's logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation.

- A full response to Plaintiff's Interrogatory No. 3, either (1) providing all responsive maintenance and repair information, whether relevant to the cause of the accident or not; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation.

- A full response to Plaintiff's Interrogatory No. 14, either (1) providing the detail requested of responsive communications, including time, persons involved, and general subjects; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation, to include taking the steps Beck outlined in his deposition that he could take to search for responsive communications (Doc. 227-2 at 12, Beck dep. at 162:5-25).

- A full response to Plaintiff's Request for Production No. 34, either (1) producing all responsive leases, to include leases with DM World; or (2) stating such information is not in Defendant's possession, custody, or control after a reasonable search.

I further recommend setting a date for Defendant's compliance and ordering that

Defendant can avoid this fine by complying with these obligations before such date.

The undersigned thus certifies the above facts to the district judge under 28 U.S.C.

§ 636(e)(6). Although § 636(e)(6) requires the Court to "hear the evidence" as to the certified

facts, an evidentiary hearing need not be held where relevant facts are not in dispute, *Silva v.*

*Coast to Coast. Fin. Sols., Inc.*, No. 14cv2584, 2020 WL 9432701, at *3 (D. Colo. Feb. 10,

2020). Therefore, Defendant shall have 14 days from the date of this Order to file a notice with

the Court indicating whether it disputes any of the above facts and setting forth the basis for its

dispute.

      SO ORDERED.

                              _____
                              STEVEN C. YARBROUGH
                              UNITED STATES MAGISTRATE JUDGE