# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

BOBBY GUTIERREZ,
*in his capacity as Wrongful Death Personal Representative*
*of the Estate of Robert P. Gutierrez,*

        Plaintiff,

        vs.                            Case No. 1:21-cv-00073-KWR-SCY

UNI TRANS, LLC, UNITRANS, LLC,
CEVA GROUND US, LLP,

        Defendants.

## ORDER ADOPTING REPORTS AND RECOMMENDATIONS AND FINDING

## DEFENDANT IN CIVL CONTEMPT

This matter is before the Court on the Magistrate Judge's Report and Recommendations (Doc. 274) and Order Certifying Facts Regarding Contempt Pursuant to 28 U.S.C. § 636(e)(6), (Doc. 275). The Report and Recommendations recommended granting Plaintiff's Second Motion to Compel Discovery Answers and Responses to Plaintiff's First Set of Written Discovery from Defendant Uni Trans, LLC, Depositions, and For Sanctions (Doc. 181) and granting in part Plaintiff's Supplemental Motion for Sanctions Stemming from Its Motions to Compel Discovery Answers and Responses and Deposition from Defendant Uni Trans, LLC (Doc. 227). Defendant Uni Trans filed objections to the Report and Recommendations and Order Certifying Facts Regarding Contempt. Doc. 276. The Court held an evidentiary hearing on Thursday July 27, 2023. Having considered the evidence and arguments presented by the parties, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **GRANTS** Plaintiff's Second Motion to Compel Discovery Answers and Responses (Doc. 181) and **GRANTS IN PART**

Plaintiff's Supplemental Motion for Sanctions Stemming from Its Motions to Compel Discovery (Doc. 227). The Court also holds Defendant Uni Trans, LLC in contempt of court.

## BACKGROUND

This diversity case is a personal injury action resulting from a tragic traffic collision in New Mexico. Plaintiff Bobby Gutierrez, in his capacity as Wrongful Death Personal Representative of the Estate of Mr. Gutierrez, alleges the following claims: Negligence and Negligence *per se* against Saydiev Otebek[1] and vicarious liability of Defendant Uni Trans, LLC ("Uni Trans") (Count I), and Negligence, Negligence *per se*, and Joint and Several Liability against all Defendants (Count II). Doc. 80. The parties agree that Defendant Uni Trans is vicariously liable for Mr. Otebek's negligence in the traffic collision. Doc. 274 at 2. However, the parties dispute if Defendant engaged in conduct that makes it liable for punitive damages and whether Defendant attempted to shift its assets into various other entities. *Id*. This matter is now before the Court because of Defendants violation of the Court's orders and lack of cooperation in discovery.

Plaintiff served his First Set of Interrogatories and Requests for Production to Defendant on May 12, 2022. Doc. 275 ¶ 1. Defendant served its responses on June 28, 2022. *Id*. ¶ 2. On August 26, 2022, the Court issued an order and found that "Defendant failed to answer the discovery requests within the meaning of Rule 37(a)(4)." Doc. 154 at 2. The Court's order explained:

> When responding to discovery, "Counsel has an obligation to assure that the client complies with discovery obligations and court orders and, thus, *careful inquiry by counsel* is mandated in order to determine the existence of discoverable documents and to assure their production." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1229 (10th Cir. 2015) (internal quotation marks and alterations omitted; emphasis in original). "Trial counsel must exercise some degree of oversight to ensure that a client's employees, including in-house counsel are acting competently, diligently and ethically in order to

---

[1] Plaintiff's claims against Saydiev were dismissed without prejudice for failure to serve him. *See* **Doc. 78**.

fulfill their responsibility to the Court with respect to discovery." *Id.* (internal quotation marks and alterations omitted). "By signing disclosures required under Rule 26(a), counsel certifies that "to the best of [his] knowledge, information, and belief formed after a reasonable inquiry," a disclosure "is complete and correct as of the time it is made." *Id.* (quoting Fed. R. Civ. P. 26(g)(1)(A); alterations in original); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007).

Id. at 3. The Court's order required:

Defendant to serve amended responses to Plaintiff's Interrogatories and Requests for Production which does not rely on a promise to supplement. If, after a reasonable inquiry as described by *Sun River Energy* – in this case, one that includes full communication with counsel's clients, in person if necessary – no responsive information is obtained, Defendant may so state. The Court cautions Defendant, however, that the failure to timely provide responsive information could result in a variety of sanctions to include, in most extreme case, entry of judgment against Defendant. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). An assertion that Defendant intends to make a reasonable inquiry in the future will not suffice. The time for Defendant and Defendant's counsel to make reasonable inquiry has long passed.

*Id*. at 5. The Court further ordered Defendant to pay Plaintiff's costs in bringing the motion and to serve amended discovery answers on or before September 9, 2022. *Id.* at 5-6. Defendant did not serve amended discovery answers on or before September 9, 2022. Doc. 275 ¶ 6. On November 11, 2022, Plaintiff filed a motion to compel Plaintiff's first set of written discovery. Doc. 181. As of November 11, 2022, Defendant had not complied with the Court's order to supplement its responses. *Id*. at 1. On November 23, 2022, Defendant filed its response to the Motion to Compel (Doc. 191) and served supplemental answers to Plaintiff's first set of discovery (Doc. 190).

The Magistrate Judge set a hearing for January 11, 2023 to determine the extent to which Defendant's supplemental responses remained incomplete. Doc. 275 ¶ 9. At the hearing, the Court ruled that Defendant's supplemental responses were insufficient. *Id.* ¶ 10. On January 13, 2023, the Court issued a written order that Defendant supplement its discovery answers to either produce fully responsive information or state that all information in Defendant's possession has

been disclosed with respect to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 14, 18, 20, 22, 25, 26, and 28; and Request for Production Nos. 13, 14, 20, 27, 28, 29, 30, 32, 33, 35, 36, 38, 39, 41, and 44 by January 16, 2023, the Monday of the week of scheduled depositions. Doc. 214 at 1-2. Defendant served its Fourth Supplemental Responses to Plaintiff's first set of discovery on January 16, 2023. Doc. 227. However, these supplemental responses did not comply with the Court's order regarding Interrogatory Nos. 2, 3, and 14. Doc. 275 ¶¶ 13-25. Furthermore, Defendant failed to comply with Request for Production No. 34. *Id.* ¶ 26. The Court's January 13 order did not require Defendant to fully answer Request for Production No. 34 because prior to taking the deposition of the corporate representatives, Plaintiff agreed that one of the Defendant's supplemental productions resolved this issue. Doc. 196 at 8. However, depositions revealed that Defendant had not provided full discovery in its supplemental answers for Request for Production No. 34. Doc. 275 ¶ 30. The Court's August 26 order required Defendant to conduct a reasonable inquiry and to amend its discovery responses by September 9, 2022 with respect to Request for Production No. 34. Doc. 154

On February 13, 2023, Plaintiff filed a Supplemental Motion for Sanctions stemming from its Motion to Compel Discovery from Defendant Uni Trans. Doc. 227. On June 5, 2023, the Magistrate Judge issued his Report and Recommendations (Doc. 274) and Order Certifying Facts for Civil Contempt (Doc. 275), which recommended: (1) the entry of a default judgment against Defendant; (2) Defendant to pay Plaintiff's cost incurred in connection with the two sanctions motions; (3) the Court hold Defendant in contempt of court; and (4) that the Court deny, without prejudice, Plaintiff's request for jury instructions. Doc. 274 at 27; Doc. 275 at 11. On July 27, 2023, the Court held a hearing and allowed Defendant to show cause to why it should not be held in contempt.

## DISCUSSION

### I.     The Court finds Uni Trans in Contempt of Court.

Defendant argues that while it is technically not in compliance with some of the Court's orders, that the documents and information it has failed to produce have no connection to Plaintiff's claims and that the failure does not merit the sanctions. Doc. 276 at 1. The Court disagrees and finds Defendant in contempt of court for the following reasons.

Under 28 U.S.C. § 636(e)(6), a magistrate judge may certify facts constituting civil contempt to the district judge. The district judge must then make an independent review of the facts certified and consider any additional evidence to determine whether the facts constitute contempt, and if so, what sanctions are appropriate. *Kologik Cap., LLC v. In Force Tech., LLC*, No. CV 18-11168-GAO, 2021 WL 2627799, at *4 (D. Mass. Apr. 20, 2021); *Coan v. Dunne*, 602 B.R. 429, 436 (D. Conn. 2019); *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2018 WL 5629900, at *1 (S.D.N.Y. 2018)); *Kellar v. U.S. Dep't of Veteran's Affairs*, 2009 WL 1364878, at *2 (D. Colo. May 12, 2009).

In a motion for civil contempt, the moving party has the "burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).

Whether a contempt is civil or criminal "turns on the character and purpose of the sanction involved." A contempt sanction is considered "civil if it is remedial, and for the benefit of the complainant." If contempt is criminal, then "the sentence is punitive, to vindicate the authority of the court." *In International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 827–28 (1994), cited in *In re Lucre Management Group, LLC,* 365 F.3d 874 (2004). In

civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id*. at 828 (internal quotations and citations omitted). On the other hand, "a completed act of disobedience that the contemnor cannot avoid" is criminal in nature. *Id*. Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: (1) to compel or coerce obedience to a court order (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *O'Connor v. Midwest Pipe Fabrications, Inc*., 972 F.2d 1204, 1211 (10th Cir. 1992); *see also Bagwell,* 512 U.S. at 827 (sanctions for civil contempt resulting from actions occurring outside the courtroom are designed to compel future compliance with a court order).

A court is justified in holding a party in civil contempt for failure to comply with an order of the court when: (1) the court's order was clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has failed to make reasonably diligent efforts to comply. *ClearOne Communications, Inc. v. Bowers*, 651 F.3d 1200, 1210 (10th Cir. 2011); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990). Sanctions for civil contempt resulting from actions occurring outside the courtroom are designed to compel future compliance with a court order. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). In an ordinary civil proceeding, such sanctions may be imposed upon notice and an opportunity to be heard. *Id*. Proof beyond a reasonable doubt and a jury trial are not necessary. *Id*. at 831-832. A civil contempt sanction may involve confining a contemnor until he complies with an affirmative command. *Id*. at 827. A court may confine a civil contemnor only "when the contemnor is given the option of earlier release if he complies . . . . [and] is able to purge the contempt and obtain his

release by committing an affirmative act." *Id*. Civil contempt therefore performs a remedial and not a punitive function. *Id*. Further, jailing a party for civil contempt is not an abuse of a court's discretion. *See United States v. Ford*, 514 F.3d 1047, 1052 (10th Cir. 2008) (holding that the District Court did not abuse its discretion in ordering a taxpayer to be held incarcerated in civil contempt until he complied with the court's prior order); *Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991) (the inherent power of all courts to order the confinement of a contemnor is firmly established).

First, the Court finds the Court's orders on August 26, 2022 and January 13, 2023 were clear and unambiguous.[2] The Court's August 26 order explained that Defendant failed to answer the discovery request within the meaning of Rule 37(a)(4) and contained almost no substantive response. Doc. 154 at 2. The Court's August 26 order also required Defendant to service amended Responses to Plaintiff's Interrogatories and Requests for Production within 14 days of the Order. The Court's January 13 order required Defendant to supplement its discovery answers "to either produce fully responsive information or state that all information in Defendant's possession has been disclosed" with respect to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 14, 18, 20, 22, 25, 26, and 28 and Request for Production Nos. 13, 14, 20, 27, 28, 29, 30, 32, 33, 35, 36, 38, 39, 41, and 44 by January 16, 2023. Doc. 214 at 1-2. The Court finds both orders were clear and unambiguous regarding Defendant's discovery obligations. While the Court's January 16 order did not require Defendant to produce information regarding Request for Production No. 34, the Court finds that the Court's August 26 order required Defendant to conduct a reasonable inquiry and to amend its discovery responses with respect to Request for Production No. 34. Therefore, the Court finds that the Court's orders were clear and unambiguous that Defendant must either

---

[2] Defendant does not argue in its objections that the Court orders were unclear or ambiguous. The Court makes these findings for a thorough opinion.

produce fully responsive information or state that all information in Defendant's possession has been disclosed with respect to Interrogatory No. 2, 3, 14 and Request for Production No. 34.

Second, the Court finds that the proof of noncompliance is clear and convincing for Interrogatory Nos. 2, 3, 14 and Request for Production No. 34 and Defendant has failed to make reasonably diligent efforts to comply.

**INTERROGATORY NO. 2**: If Defendant performs hours of service log audits, explain what is entailed in the auditing process, identify who performs the audits (in-house or outsourced), and identify when, if ever Defendant's logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat.

**ANSWER**: Defendant will supplement this in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

**SUPPLEMENTAL ANSWER**: Audits were performed by the HOS Department.

**SECOND SUPPLEMENTAL ANSWER**: "HOS" is our Hours of Service department which monitors whether the hours recorded by drivers are accurate. This is performed by a third party vendor.

Doc. 227-1 at 2. The Magistrate Judge held that the supplemental answer failed to explain what is entailed in the auditing process, failed to identify the third-party vendor, and failed to identify when, if ever, Defendant's logs were audited, including the logs of Mr. Saydiev and Mr. Azamat. Doc. 275 ¶ 13. Defendant argues that its answer was complete because the Samsara electronic logging device ("ELD") was used and the Samsara Hours of Service report for Mr. Otebek was produced. Doc. 232 at 1. Defendant further argues that there is a "mistake belief that the information generated from the Samsura logging device is audited." Doc. 276 at 2. Defendant argues that the Samsura logging device is the audit. *Id.*

Defendant is incorrect. Use of an ELD is not an audit. ELD is a tool to collect data related to the Driver's record of duty status (RODS). ELDs "must automatically link to vehicle engines when the engines turn on, and they must record the date, time, location, engine hours, vehicle

miles, driver identification, vehicle identification, and motor carrier identification." *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transportation*, 840 F.3d 879, 887 (7th Cir. 2016) (citing 49 C.F.R. § 395.26). During audits, the Federal Motor Carrier Safety Administration (FMCSA) uses the ELD records and *other* supporting documents to ensure compliance. 49 C.F.R. § 395.32 ("During a safety inspection, audit or investigation by an authorized safety official, a motor carrier must make available unidentified driving records from the ELD corresponding to the time period for which ELD records are required."). In response to a comment on the ELD Rule, the FMCSA discussed motor carrier auditing ELD records. FMCSA stated, "Regarding the issue of providing carriers enough time to audit electronic RODS and make corrections, FMCSA does not place limits on when an annotation or correction may be made. The motor carrier must maintain the original record so that authorized safety officials can compare the chronology with the annotations and corrections, and supporting documents." 80 FR 78292-01. In other words, ELDs are not themselves audits. "Had Congress envisioned that the ELD could automatically track every duty status, it would have simply eliminated the need for supporting documents." 80 FR 78292-01.

Defendant is a motor carrier with experience with FMCSA compliance. The term "audit" should not be confused with "ELD", especially considering that ELD are currently mandated for motor carriers. 49 C.F.R. § 395.26. At the July 27 hearing, Defendant stated that there is not an audit for the Samsura ELD logs. If Samsura does not audit the collected data and Defendant does not audit their HOS logs, then Defendant needs to produce fully responsive supplemental answer regarding that information. Currently, Defendant has not done so.

The Court finds that Defendant did not comply with the Court's orders to conduct a reasonable inquiry as described by *Sun River Energy* and to either produce fully responsive

information or state that all information in Defendant's possession has been disclosed with respect to Interrogatory No. 2. Therefore, the proof of noncompliance is clear and convincing, and Defendant has failed to make reasonably diligent efforts to comply.

> **INTERROGATORY NO. 3**: With respect to the trailer operated by Otabek Saydiev at the time of the Subject Incident, identify the registered owner, mileage and gross weight at the time of the Subject Incident; state the manufacturer, identification number, model number, and year of the engine in the tractor and identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present.

> **ANSWER**: Uni Trans is the owner of the trailer. Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

> **SUPPLEMENTAL ANSWER**: Trailer information:
> Trailer #203290PLA – 5V8VC532XLT010638 – 1010 VNTC
> Owner: Star Leasing Co.
> Load Gross Weight: 7180 lbs.
> Truck information:
> Truck # 204 – 4V4NC9EH2LN239089 – 2020 VOLVO VNL
> Owner: Uni Trans, LLC, at the time of loss.

> **SECOND SUPPLEMENTAL ANSWER**: Additional Truck information:
> Chassis ID: NR 239089
> Engine Model # D13 455HP 1850 LBFT
> Engine Serial # D13/1274916
> Manufactured at Volvo's New River Valley Plant in Dunlin, Virginia on 9/26/19.

Doc. 227-1 at 1-2. The Magistrate Judge held that Defendant failed to provide "all maintenance and repairs performed for the time period from 12 months before the Subject Incident to present" nor did Defendant state it did not have such information after a reasonable investigation. Doc. 275 ¶ 17. Defendant argues that Uni Trans representative Jahongir Gaybullaev testified that the truck was only a few months old, and that it was maybe brought in for an oil change, and that failure to provide record showing an oil change does not merit the proposed sanction. Doc. 276 at 2-3. However, Mr. Gaybullaev further testified that they have all the maintenance records. Doc 274 at 11. "Counsel has an obligation to assure that the client

complies with discovery obligations and court orders and, thus, *careful inquiry by counsel* is mandated in order to determine the existence of discoverable documents and to assure their production." *Sun River Energy*, 800 F.3d at 1229. At the July 27 hearing, Defendant admitted it was able to locate the invoice for the oil change and produced it to Plaintiff. The invoice was emailed to Plaintiff the day before the hearing. Plaintiff stated they received a receipt for $43 from March 18, 2020, but the receipt appears to be for parts, not the oil change.

Defendant failed to comply with the Court's order. An oil change is maintenance on the trailer, and thus, Defendant must identify all maintenance and repairs performed for the time period from 12 months before the Subject Incident. It is unclear to the Court if this is the invoice is for the oil change and/or there are additional records related to what the purchased parts were used for. Defendant must either produce fully responsive information regarding maintenance and repairs or state that all information in Defendant's possession has been disclosed. The Court finds Defendant failed to do so, and thus, the proof of noncompliance is clear and convincing. The Court also finds that Defendant failed to make reasonably diligent efforts to comply because this invoice, which may or may not be for the oil change, was provided the day before the scheduled hearing and months after the Court's orders.

**INTERROGATORY NO. 14**: Identify and explain all communications of any kind between Defendant and Otabek Saydiev, or anyone acting for or on behalf of Otabek Saydiev, during the twenty-four (24) hours before and after the Subject Incident. For each communication, identify the method of communication (cell phone, Qual Comm, other), time of communication, persons involved, and the general subject.

**ANSWER**: Communication was through Uni Trans dispatchers. Defendant will supplement this interrogatory in accordance with the Federal Rules of Civil Procedure and the local rules of this Court.

**SUPPLEMENTAL ANSWER**: Dispatchers.

**SECOND SUPPLEMENTAL ANSWER**: Otebek Saydiev reported the accident by calling a Uni Trans LLC dispatcher following the accident.

Doc. 227-1 at 6-7. The Magistrate Judge held that Defendant's response lacked any of the detail requested, including time, persons involved, or any detail as to the general subjects. Doc. 275 ¶ 21. Defendant agrees that it failed to identify the person initially contacted by Mr. Saydiev after the accident, but Defendant argues that the content of the initial contact was fully disclosed in Mr. Gaybullaev's deposition. Doc. 276 at 3-4.

The content of the conversation is only part of the requested information. Defendant has still failed to include the time of the communication, method of communication, and person involved in the communication. Mr. Gaybullaev testified that he could find out who Mr. Saydiev spoke with and could further find the Telegram conversations between Mr. Saydiev and the people that he talked to at Uni Trans. Doc. 274 at 12-13. It is unreasonable that if this information is available that Defendant failed to provide it. Defendant argues that it did provide available Telegram messages, and that senders of messages can delete them, so Mr. Saydiev may have deleted them. Doc. 232 at 2. The Court agrees with the Magistrate Judge that Defendant did not make a reasonable or timely investigation of other Uni Trans employees' Telegram messages, and thus, Defendant failed to fully and timely answer the interrogatory. Doc. 274 at 13.

At the July 27 hearing, Defendant informed the Court that it located and provided the dispatcher's name to Plaintiff. Plaintiff has still not received the recorded Telegram message from the dispatcher. Defendant stated that it has the Telegram message from the dispatcher and it will provide the Telegram message from the dispatcher to Plaintiff.

"Trial counsel must exercise some degree of oversight to ensure that a client's employees, including in-house counsel are acting competently, diligently and ethically in order to fulfill their responsibility to the Court with respect to discovery." *Sun River Energy,* 800 F.3d

at 1229. The Court finds Defendant has failed to timely provide the information and is still in noncompliance. Thus, the Court finds that the proof of noncompliance is clear and convincing, and Defendant has failed to make reasonably diligent efforts to comply.

> **REQUEST FOR PRODUCTION NO. 34**: A copy of all lease and trip lease contracts applicable to Defendant Uni Trans and/or any vehicle involved in the Subject Incident.

Doc. 138-1 at 25. On January 17, 2023, a corporate representative testified about subleases with a company called DM World, but Defendant produced no documents about this company. Doc. 275 ¶ 27. Defendant argues that the DM World subleases are not relevant. Doc. 276 at 4. Defendant argues that the tractor trailer involved in the accident was one of five vehicles purchased directly by Uni Trans just a few months before the accident was not a vehicle obtained through a DM World lease that was assumed or "subleased" by Uni Trans. *Id.* Defendant further argues that the DM World subleases were informal arrangement whereby tractor trailers leased by DM World from Ryder and other companies were used by Uni Trans. *Id.* Uni Trans paid the lease payments at first to DM World and, later, directly to Ryder. *Id.* When DM World threatened to take back the tractor trailers, Uni Trans sought to obtain leasing agreements directly with Ryder. Defendant argues that the DM world documentation is not relevant to the issues in this case. *Id.*

Defendant waived the relevancy objections. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."); *see also* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

At the July 27 hearing, Defendant stated that they do not have the DM World leases in their possession. Defendant stated that the DM World leases were done verbally. The Court August 26 Order, stated that "[i]f, after a reasonable inquiry as described by *Sun River Energy* – in this case, one that includes full communication with counsel's clients, in person if necessary – no responsive information is obtained, Defendant may so state." Rule 34 requires Defendant to "respond in writing" and Rule 26(g) requires "every discovery request, response, or objection [to] be signed by at least one attorney of record . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry . . . with respect to disclosure, it is complete and correct as of the time it is made." Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Civ. P. 26(g)(1). Defendant has not yet produced a sign writing stating the DM World leases are unavailable. Therefore, the Court finds that the proof of noncompliance is clear and convincing and that Defendant has failed to make reasonably diligent efforts to comply.

After an independent review of the facts certified and considering additional evidence, the Court finds that the facts constitute contempt.

## II. The Court Agrees and Adopts the Magistrate Judge's Report and Recommendations.

Defendant argues that the failure to comply with the Court's orders does not merit the proposed sanctions. Doc. 276 at 8-9. The Court disagrees. For the reasons discussed below, the Court adopts the Magistrate Judge's Report and Recommendations (Doc. 274) and grants Plaintiff's Motion to Compel Discovery Answers and Responses (Doc. 181) and grants in part Plaintiff's Supplemental Motion for Sanctions Stemming from Its Motions to Compel Discovery Answers and Responses (Doc. 227)

The district court must conduct a de novo review of the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir.1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations."). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Under Federal Rule of Civil Procedure 37(b), the Court may order sanctions if "a party…fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." *See* Fed. R. Civ. P. 37(b)(2)(A). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* at 37(a)(4). Sanctions for failure to provide or permit discovery may include, but are not limited to, prohibiting a disobedient party from supporting claims or defenses or introducing designated matters into evidence, staying further proceedings until the order is obeyed, striking pleadings in whole or in part, dismissing the action, rendering a default judgment against the disobedient party, or treating the failure as contempt. *Id.* at 37(b)(2)(A)(i)-(vii).

While the Court has discretion to choose a sanction, "the chosen sanction must be both just and related to the particular claim which was at issue." *See Ehrenhaus*, 965 F.2d at 920 (internal quotations omitted) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). "[D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct." *Id.* at 920. Thus, to determine whether dismissal or other sanctions are appropriate under Rule 37, the Court may consider five factors, including: (1) the degree of actual prejudice to the party; (2) the amount of interference with the judicial process;

(3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 921; *see also Klein v. Harper,* 777 F.3d 1144, 1147-48 (10th Cir. 2015). Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and dismissal is appropriate only when "aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *See Ehrenhaus*, 965 F.2d at 920-21 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)).

The Court finds that Plaintiff has experienced actual prejudice. Defendant argues that Plaintiff has not experienced prejudice from the "delay in providing safety manuals, drug and alcohol policies, Telegram messages (that had not been formally requested), or documentation of an oil change for the three month old tractor involved in the accident." Doc. 232 at 5. Defendant further argues that it timely supplied the information Plaintiff needs to establish liability on part of Uni Trans and its driver, and thus, Plaintiff was not prejudiced from delay because the delayed discovery is unrelated to liability. *Id.* Plaintiff argues he was prejudiced because Defendant's failure to comply with discovery requests and has absorbed significant resources. Doc. 227 at 9-10. Plaintiff also argued that the discovery violations have prejudiced Plaintiff's ability to obtain evidence that would support his request for punitive damages. Doc. 274 at 21-22. Plaintiff further argues that Defendant's refusal to provide information about its financial status has prejudiced Plaintiff. *Id*. at 22. The Court finds that Plaintiff has experienced significant prejudice from Defendant's discovery violation.

Defendant has conceded to vicarious liability for Mr. Otebek's negligence, and thus, the issue in dispute is whether Defendant can be held liable for punitive damages. Therefore, Defendant's argument that the delayed discovery does not affect whether Defendant is liable for

negligence is unpersuasive. The Court finds that Defendant's discovery violations have prejudiced Plaintiff's ability to establish liability for punitive damages. "A corporation may be held liable for punitive damages for the misconduct of its employees if: (1) corporate employees possessing managerial capacity engage in *conduct* warranting punitive damages; (2) the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages; or (3) under certain circumstances, the cumulative effects of the conduct of corporate employees demonstrate a culpable mental state warranting punitive damages." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 21, 140 N.M. 478, 486 (emphasis added); *see also* NMRA UJI 13- 1827. The information Plaintiff seeks goes to Defendant's conduct and whether that conduct warrants punitive damages. This has prejudiced the Plaintiff. As one example, Defendant provided the invoice for maintenance and name of the dispatcher *the day prior* to the July 27, 2023 hearing. Because discovery is closed, Plaintiff is unable to obtain more information about the maintenance record or the dispatcher. Defendant's refusal to provide financial information has also prejudiced Plaintiff. Defendant claims that it does not have the insurance coverage necessary to pay the judgment in this case – less than $5,000 available under its insurance liability provision. Doc. 232 at 6. Because Defendant concedes liability, failure to provide financial information prejudiced Plaintiff in determining the collection of judgment once entered. The Court also agrees that Plaintiff's resources were significantly absorbed because of Defendant's discovery violations. Therefore, the Court finds that Plaintiff was prejudiced from Defendant's discovery violations.

The Court finds that Defendant's interference with the judicial process was high. As outlined earlier, Defendant has repeatedly disobeyed court orders compelling discovery, missed a Court deadline regarding supplemental answers, delayed the judicial process, and in the Court's

efforts to enforce compliance, Defendant used a substantial amount of the Court's resources. *Hall v. Wal-Mart*, No. 09-CV-01410-WYD-CBS, 2009 WL 6337957, at *3 (D. Colo. Dec. 18, 2009), *report and recommendation adopted,* No. 09-CV-01410-WYD-CBS, 2010 WL 1416785 (D. Colo. Apr. 7, 2010) ("[C]ontinuing noncompliance with the court's orders has increased the workload of the court and interfered with the administration of justice.") The Court finds that this factor weighs in favor of sanctions.

The Court finds that Defendant is culpable. The culpability factor requires " 'willfulness, bad faith, or [some] fault' rather than just a simple 'inability to comply.' " *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (alteration in original) (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995)). As discussed, Defendant has willfully disobeyed the Court's orders. Additionally, Mr. Gaybullaev deposition demonstrates that he had the discoverable information but failed to conduct a reasonable investigation or produce it in a timely manner. Doc. 227-2 at 10 (discussing how there was an oil change); Doc. 227-2 at 13 (discussing how he did not have the information because he still had to talk to his fleet guys and safety guys). Mr. Gaybullaev deposition also reveals that it was not simply an inability to comply, but a willful disregard for the discovery process. In his deposition, he admits that he hasn't read all the topics that are in the Notice of Deposition. He states, "Some of them are the facts and the witnesses and documents, you know, I told Charlie to do. I don't have time every single, you know, thing to do it myself." Doc. 227-2 at 13. His lackadaisical approach to the discovery process was willful, and thus the Court finds the litigant culpable.

The Court warned Defendant in advance that default judgment would be a likely sanction for noncompliance. In the Court's August 26 order, the Court warned Defendant "that failure to timely provide responsive information could result in a variety of sanctions to include, in the

most extreme case, entry of judgment against Defendant." Doc. 154 at 5. At January 11, 2023 hearing, the Court also warned Defendant of possible sanctions, discussed the factors relevant to entering default judgment, and invited arguments from both parties.

The Court finds that a default judgment is an appropriate sanction. A default judgment is seen as an extreme sanction. However, here, Defendant has admitted vicarious liability for negligence. The Court finds entering default judgment is appropriate because Defendant has violated two court orders and continues to do so. All five *Ehrenhaus* factors support entering a default judgment, and therefore, the Court enters a default judgment against Uni Trans, LLC. The Court will also grant Plaintiff's request for costs associated with the sanctions motion.

Plaintiff also requested the following jury instructions:

Defendant has actively hidden documentation related to its net worth. For the purpose of evaluating punitive damages, the jury may assume that Defendant has withheld its proper value and the jury may assume its value without evidence establishing that value.

Defendant has failed to produce and/or preserve critical documents depicting communications following the subject accident. The jury may assume those documents are against the interest of Defendant.

Doc. 227 at 11. The Court agrees with the Magistrate Judge and finds that the instructions are vague and creates speculation. Therefore, the Court denies Plaintiff's request for jury instruction.

**IT IS THEREFORE ORDERED** that Defendant's objections are **OVERRULED** and that the Recommendations (Doc. 275) of United States Magistrate Judge dated June 5, 2023, are **ADOPTED**. In accordance therewith, it is

**FURTHER ORDERED** that Plaintiff's Second Motion to Compel Discovery Answers and Responses (Doc. 181) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Supplemental Motion for Sanctions Stemming from Its Motions to Compel Discovery (Doc. 227) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that default judgment is entered against Defendant Uni Trans, LLC.

**IT IS FURTHER ORDERED** that Defendant Uni Trans, LLC pay for attorney's fees in connection with the sanctions motion. Plaintiff must submit affidavits and evidence regarding the amount of attorney fees within 14 days of this order. Defendant has 14 days after Plaintiff's submission to object to the amount of the attorney fees.

**IT IS FURTHER ORDERED** that Plaintiff's request for jury instructions is **DENIED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that Defendant Uni Trans, LLC is held in contempt of court. Defendant must pay a fine, payable to Plaintiff, of $1,000 for every day that Defendant does not cure the following deficiencies:

1) A full response to Plaintiff's Interrogatory No. 2, either (1) explaining what is entailed in the auditing process, identifying the third-party vendor, and identifying when, if ever, Defendant's logs were audited, including the logs of Otabek Saydiev and Rizakulov Azamat; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation.

2) A full response to Plaintiff's Interrogatory No. 3, either (1) providing all responsive maintenance and repair information, whether relevant to the cause of the accident or not; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation.

3) A full response to Plaintiff's Interrogatory No. 14, either (1) providing the detail requested of responsive communications, including time, persons involved, general subjects, and providing the Telegram recordings; or (2) stating under oath that this information is not available to Defendant after a reasonable investigation, to include taking the steps Gaybullaev outlined in his deposition that he could take to search for responsive communications (Doc. 227-2 at 12).

4)  A full response to Plaintiff's Request for Production No. 34, either (1) producing all responsive leases, to include leases with DM World; or (2) stating under oath such information is not in Defendant's possession, custody, or control after a reasonable search.

Defendant can avoid this fine by complying with these obligations by 5:00p.m. on **September 11. 2023**.


KEA W. RIGGS
UNITED STATES DISTRICT JUDGE